**Faith D. DAVIS, Appellant,**

v.

**TWIN CITY FIRE INSURANCE COMPANY, Appellee.**

**No. 06–92–00031–CV.**

Court of Appeals of Texas, Texarkana.

Oct. 5, 1993.

Rehearing Overruled Nov. 2, 1993.

Dale B. Tillery, Edwards and Tillery, Dallas, for appellant.

P. Michael Jung, Strasburger & Price, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Faith Davis sued Twin City Fire Insurance Company because it refused to buy her a hot tub pursuant to a workers' compensation settlement agreement. The trial court entered judgment unfavorable in part to each party and both parties appeal.

## ISSUES

Davis contends that the trial court erred (1) in disregarding a jury finding awarding her $100,000 in exemplary damages, (2) in refusing to include prejudgment interest in the judgment, and (3) in concluding that the settlement agreement was ambiguous. Davis also contends that if this court deems a retrial of this case necessary, we should find that the trial court erred in excluding her from viewing certain materials produced by Twin City and viewed by the court in camera and in refusing to admit into evidence proof of Twin City's net worth.

Twin City contends that the award and decision of the Industrial Accident Board bars the present suit and that the jury's exemplary damages finding was excessive.

## DISPOSITION

We modify the judgment of the trial court by reinstating the jury's award of exemplary damages, by awarding prejudgment interest, and by modifying the attorney's fees. We affirm the judgment as modified.

## FACTS

On October 30, 1986, Faith Davis injured her lower back while lifting a box of files in the course and scope of her employment. As a result of this incident, Davis filed a workers' compensation claim against Twin City, her employer's workers' compensation carrier. In December 1987, the parties entered into a Compromise Settlement Agreement and Release under which Twin City agreed to pay Davis a lump sum of $37,500, in addition to "five years future medical expenses with Dr. Key, or any other mutually agreed upon physician in advance."

In September 1987, Davis received a prescription from Dr. James Key for a "hot tub or jacuzzi for a large body for life." On December 4, three days after the parties signed the settlement agreement, Davis's attorney sent the prescription to Twin City who received it on December 7. The trial court approved the settlement agreement on December 14.

Twin City then sent a letter to Davis's attorney requesting that Dr. Key provide a letter of medical necessity regarding the hot tub and further stating that Twin City would submit the prescription to an orthopedic consultant at Southwestern Medical School. On April 20, 1988, Davis's attorney sent Dr. Key's letter of medical necessity and four estimates for hot tubs to Twin City. On May 10, 1988, Twin City forwarded Dr. Key's letter to the Texas Medical Foundation (TMF), which Twin City had retained to do medical consultation. Twin City then informed Davis that it expected TMF to perform the review. TMF completed its review and sent a letter dated October 27, 1988, to Twin City summarizing the review and supporting the use of the whirlpool for Davis's condition. The two Twin City employees who handled Davis's claim, however, testified

that they did not become aware of the results of the review until significantly later.

On October 17, 1988, more than ten months after Twin City received the hot tub prescription, Davis's attorney sent a letter to the Industrial Accident Board (IAB) requesting a pre-hearing conference regarding Twin City's failure to pay for the hot tub. The letter stated that Davis had received no communication from Twin City since May 10. Having received a copy of the letter to the IAB, Twin City employees felt it important that they make a determination regarding the hot tub. Having recently received an orthopedist's review of another patient's file, which questioned the efficacy of using a hot tub to treat a lower back ailment, Twin City preliminarily denied Davis's claim.

On October 28, 1988, Twin City sent a letter to Davis stating that a board certified orthopedist had reviewed the medical necessity for a hot tub, that the orthopedist concluded that an in-ground hot tub was not justified, but that Twin City intended to consult with another orthopedist.

On January 25, 1989, Twin City sent Davis a letter in which it unequivocally denied her claim. The letter stated that an orthopedist had reviewed Davis's medical file and rejected the hot tub treatment as not medically necessary. The actual review of Davis's file by the TMF orthopedist supported the use of a hot tub for treating her lower back, stating that "it would be reasonable to attempt use of a portable whirlpool for treatment of this patient's back problem. However, if inadequate depth of water due to the size of the tub or patient, then a larger tub may be necessary." TMF dated its review October 27, 1988, but the Twin City employees in charge of Davis's claim testified that they did not become aware of the review until after Davis filed suit. Although a Twin City employee testified that Davis's claim was rejected in part because it was believed that she wanted an in-ground unit, Davis never requested an in-ground unit, and Twin City did not suggest an alternative in either of its denial letters. One of the employees further testified that after becoming aware of the TMF review, Twin City offered Davis $150 to purchase an over-the-tub whirlpool unit.

The evidence indicates that Davis requires a stand-alone hot tub to obtain the desired results from the treatment. Twin City produced no evidence at trial suggesting that it ever attempted to correct the inaccuracies in the January 25 letter—despite the fact that, as the Twin City supervisor in charge of Davis's file testified, the letter was "not accurate at all."

On March 6, 1988, the IAB denied Davis's claim stating that the evidence submitted failed to bring Davis within the provisions of the Texas Workers' Compensation Act because the bill for the hot tub had not accrued. Davis then filed suit against Twin City alleging fraud, rescission of contract, breach of contract, intentional and negligent infliction of emotional distress, insurance code and Deceptive Trade Practices Act violations, failure to pay workers' compensation benefits, and a breach of the duty of good faith and fair dealing.

The jury returned answers indicating (1) that Twin City engaged in unfair or deceptive acts or practices, (2) that Twin City failed to deal fairly and in good faith, (3) that Twin City did not commit this conduct knowingly, (4) that the parties did not agree to hold Twin City responsible only for reasonable and necessary medical expenses, (5) that Twin City failed to pay reasonable and necessary medical expenses, (6) that Davis did not detrimentally rely on material misrepresentations made by Twin City in entering into the settlement agreement, (7) that actual damages amounted to $3,500, (8) that Twin City acted with conscious indifference toward Davis, (9) that Twin City did not commit fraud, (10) that Twin City did not intentionally inflict emotional distress upon Davis, (11) that Twin City's conduct was not a producing cause of any physical pain or mental anguish suffered by Davis, (12) that Twin City's conduct was not a proximate cause of any physical pain or mental anguish, (13) that Davis should receive no money for any physical pain or mental anguish she suffered, (14) that Twin City should be assessed $100,000 in exemplary damages, (15) that a reasonable fee for Davis's attorney was 33% of her recovery, (16) that Davis brought suit within twenty days after giving notice of intent to

appeal the denial of her claim by the IAB, and (17) that Twin City's failure to comply with the settlement agreement was not excused.

After the jury returned its verdict, Twin City made a motion for judgment notwithstanding the verdict or, in the alternative, a motion to disregard certain jury findings. The trial court granted the motion to disregard jury findings and did not award exemplary damages in the judgment. The court rendered judgment for Davis for $3,500, plus a 12% penalty under TEX.REV.CIV.STAT.ANN. art. 8307, § 5a *Repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10) to (12), 1989 Tex.Gen.Laws 114 (current version at TEX.REV.CIV.STAT.ANN. art. 8308–6.45 (Vernon Supp.1993)), plus a 33% attorney's fee, plus post-judgment interest.

## TIMELY FILING

■■ Twin City contends in a cross-point of error that the record contains no evidence to support the jury's finding that Davis brought suit within twenty days after giving notice of her intent to appeal the IAB award and decision as required by the Workers' Compensation Act. This requirement is mandatory and jurisdictional. *Standard Fire Ins. Co. v. LaCoke*, 585 S.W.2d 678, 680 (Tex.1979). Timely filing is presumed unless denied by verified pleadings. TEX.R.CIV.P. 93(13)(e). Twin City filed a verified denial of Davis's timely filing.

Davis gave notice of intent to appeal on March 22, 1989, and she filed her Plaintiff's Original Petition on April 7, within twenty days after the notice of intent to appeal. In order to constitute a timely filing of an appeal from an IAB award, Davis's pleading must have set forth the specifics of the IAB award appealed from and it must have specified the identity of the appellee. *Ealey v. Insurance Co. of North America*, 660 S.W.2d 50, 52–3 (Tex.1983).

Twin City contends that because Davis did not have her petition entered into evidence the record reveals that no evidence went before the jury on which it could have based a finding of timely filing. This point is irrelevant, however, since the issue of timely filing attacks the very jurisdiction of the

court, and the trial court should have addressed the issue as a matter of law with no jury submission. *See Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754 (Tex.Civ. App.—Beaumont 1954, no writ) (an attack on jurisdiction is to be decided by the court as a matter of law); *see also Hartford Accident & Indemnity Co. v. Herriage*, 139 S.W.2d 873 (Tex.Civ.App.—Amarillo 1940, no writ) (proper appeal from IAB award by giving notice and filing suit within twenty days conveys jurisdiction on the trial court).

The record before the trial court contained Davis's petition which clearly names Twin City as the only appellee, and further states that:

> Plaintiff would show that this cause of action arises out of an award and decision entered by the Industrial Accident Board (see Exhibit "A" attached hereto and incorporated by reference the same as if fully set out herein) ... based upon failure to pay medical as per [the Compromise Settlement Agreement and Release].

The language of this paragraph, along with the fact that it incorporates the IAB's decision, clearly shows that Davis was appealing the IAB award. This cross-point of error is overruled.

## EXEMPLARY DAMAGES

■ Davis contends that the trial court erred in disregarding the jury's answer awarding $100,000 in exemplary damages. A trial court may disregard a jury answer when it has no support in the evidence or when it is immaterial. TEX.R.CIV.P. 301; *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *Watson v. Nortex Wholesale Nursery, Inc.*, 830 S.W.2d 747 (Tex.App.— Tyler 1992, writ denied). Since Twin City did not challenge the sufficiency of the evidence in its motion to the court below or in its appellate brief, we shall only examine the materiality of the exemplary damages submission and not the sufficiency of the evidence.

Twin City urges several theories on which the trial court could have found the exemplary damages award to be immaterial. First, Twin City argues that because the jury found

that Davis suffered no physical pain or mental anguish as the result of Twin City's conduct, the jury could not award exemplary damages.

The Supreme Court of Texas has held that a violation of the duty of good faith and fair dealing by an insurance carrier constitutes tortious conduct for which exemplary damages are available "under the same principles allowing recovery of those damages in other tort actions." *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165, 168 (Tex.1987), citing, *Trenholm v. Radcliff*, 646 S.W.2d 927 (Tex.1983). In *Trenholm*, the Court held that a finding of conscious indifference to the rights of others supports an award of exemplary damages, even absent any causal link to physical pain or mental anguish. *Trenholm*, 646 S.W.2d at 933. Since the jury found that Twin City acted with conscious indifference to Davis's rights, exemplary damages are available in this case, provided another of Twin City's arguments does not bar them.

Twin City next contends that because the $3,500 awarded in actual damages could have been the proper award under Davis's breach of contract cause of action, Davis could not receive exemplary damages as a result of a breach of the duty of good faith and fair dealing.[1] In other words, Twin City argues that since the jury question on the amount of actual damages is tied to both Davis's contract and tort claims, and actual damages have to stem from tortious conduct in order to support an exemplary damages award, the jury did not necessarily find that Twin City's tortious conduct caused the actual damages.

A breach of the duty of good faith and fair dealing, however, results in damages, as a matter of law, in at least the amount of the benefits wrongly withheld. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex.1988). Therefore, Twin City's tortious conduct caused Davis actual damages as a matter of law, and exemplary damages are available.[2] Furthermore, when the prevailing party fails to elect between alternative measures of damages, the court should utilize the findings affording the greater recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). In the present case, Davis can clearly recover greater damages under the tort action than under the contract, or the violation of the Workers' Compensation Act, because of the availability of exemplary damages, and the trial court should have rendered judgment accordingly.

Twin City next contends that the trial court should be deemed to have found that Twin City's tortious conduct did not proximately cause Davis to incur actual damages. But since, under *Vail*, a breach of the duty of good faith and fair dealing results in damages as a matter of law in at least the amount of the benefits wrongly withheld, no finding on proximate cause was necessary and none should be deemed. *Vail*, 754 S.W.2d at 136.[3] Proximate cause becomes an

---

1. Davis contends on appeal that the jury charge does not contain a breach of contract issue. Although the jury charge asked the jury to interpret the agreement between the parties, such a question does not necessarily relate only to breach of contract because a correct interpretation of the agreement is essential in determining a violation of the duty of good faith and fair dealing as well. *Koral Industries v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 148 (Tex.App.—Dallas), writ denied per curiam, 802 S.W.2d 650 (Tex. 1990). But in the present case, the question on damages relates back to the question on interpretation directly, thus suggesting that the jury could award damages based on the breach of contract. Furthermore, Question 17 asked the jury whether Twin City's failure to comply with the agreement was excused, and no reason exists for this question except that it constitutes a defense to breach of contract.

2. Twin City also argues that the jury may have found that Twin City failed to deal fairly in processing Davis's claim in some way other than denying or delaying it. Although the jury charge did ask whether Twin City acted in bad faith in *processing* the claim, it defined such bad faith only in terms of denying or delaying payment on the claim. Twin City's contention rests on an inaccurate interpretation of the jury charge. We further note that in another section of its argument Twin City states that "[u]nder the verdict in the present case ... the common-law actual damage recovery was based *solely on the benefits wrongfully withheld*" (emphasis in original).

3. Contrary to Twin City's contention, we find nothing in *American Physicians Insurance Exchange v. Garcia*, 36 Tex.Sup.Ct.J. 406, 410–11, 1992 WL 387406 (Dec. 31, 1992), that reverses the Court's statement in *Vail* that damages are

issue in suits alleging bad faith only when the plaintiff seeks actual damages beyond the amount of the benefits wrongly withheld. *See* 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGE PJC 110.18 (1992).

Twin City additionally contends that the actual damages awarded in this case stem from a denial of workers' compensation benefits and therefore cannot support an award of exemplary damages. This argument has no merit because the actual damages awarded in this case stem from a violation of the duty of good faith and fair dealing, a common law tort, and not from a denial of workers' compensation benefits. *See, e.g., Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex.1988); *Izaguirre v. Texas Employers' Ins. Assn.*, 749 S.W.2d 550 (Tex. App.—Corpus Christi 1988, writ denied). Davis alleged a breach of good faith in this suit not because she sustained a work-related injury but because Twin City committed a tort against her by denying her claim in bad faith. *Id.* We find that the exemplary damages issue was material, and the trial court should have entered the jury's award in the judgment. We sustain this point of error.

■■■ Twin City next contends that even if the trial court erred in disregarding the jury's exemplary damages finding, the jury awarded a clearly excessive amount. Comparing exemplary damages to actual damages in this case results in a 28.6 to 1 ratio. Exemplary damages must be reasonably proportioned to actual damages. *Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex. 1986); *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). In reviewing reasonable proportionality, the court should consider five factors: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Tatum,* 702 S.W.2d at 188; *Alamo,* 616 S.W.2d at 910.

In the present case, Twin City wrongly denied Davis a piece of medical equipment that an orthopedist concluded would help

treat Davis's back pain. More specifically, Twin City employees misplaced a vital review of Davis's file, and they admittedly lied to Davis in denying the claim. Furthermore, the record contains testimonial and documentary evidence that Davis has encountered numerous obstacles due to her back problems, and Twin City's bad faith conduct prevented her from getting needed treatment. In examining the public sense of justice in this case, we must also consider the deterrent effect that exemplary damages are likely to have, taking into account the fact that Twin City is a major corporation with substantial assets and it deals with numerous injured workers in its capacity as a workers' compensation carrier. *See State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 602 (Tex.App.—El Paso 1991, writ denied). We find that the record contains ample evidence to support the amount of exemplary damages awarded by the jury, and we overrule this cross-point of error. *See Beacon Nat. Ins. Co. v. Reynolds,* 799 S.W.2d 390 (Tex.App.—Fort Worth 1990, writ denied) (exemplary damages to actual damages ratio of 28 to 1 found not excessive); *see also* TEX.REV.CIV.STAT.ANN. art. 8308–10.42 (Vernon Supp.1993) (effective June 1, 1991, exemplary damages against insurance carrier for breach of duty of good faith and fair dealing are limited to the greater of four times the amount of actual damages or one-quarter of one million dollars).

### PREJUDGMENT INTEREST

■■■ Davis next contends that the trial court erred in not awarding the prejudgment interest she requested in her pleadings. TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1993) provides for prejudgment interest in suits based upon contract as well as judgments in wrongful death, personal injury, and property damage cases. There are, however, two separate bases for the award of prejudgment interest: statutory authority and general principles of equity. *Granite Construction Co. v. Mendoza*, 816 S.W.2d 756 (Tex.App.—Dallas 1991, no writ). A prevailing plaintiff should be compensated for the defendant's having the beneficial use of dam-

presumed when an insurer denies a valid claim in bad faith.

age funds between the time of the injury and the date of the judgment. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985); *see also Matthews v. DeSoto*, 721 S.W.2d 286 (Tex.1986). While on its face *Cavnar* was limited to wrongful death, survival, and personal injury actions, it created a judicial scheme for the award of prejudgment interest in other types of cases. The policies underlying *Cavnar* are based upon the equitable ground that an injured party should be made whole. *Cavnar*, 696 S.W.2d at 554. At least two courts following *Cavnar* awarded a plaintiff prejudgment interest for a breach of the duty of good faith and fair dealing. *See Commonwealth Lloyd's Ins. Co. v. Thomas*, 825 S.W.2d 135 (Tex.App.—Dallas 1992), *writ granted to approve settlement*, 843 S.W.2d 486 (Tex.1993); *Wm. H. McGee & Co. v. Schick*, 792 S.W.2d 513 (Tex.App.—Eastland 1990, no writ); *see also O'Reilly v. Grafham*, 797 S.W.2d 399 (Tex.App.—Austin 1990, no writ) (applying *Cavnar* in a nonpersonal injury, economic damage case). Equity is an appropriate basis for the award of prejudgment interest in the present case. *See Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747 (Tex.1988) (using equity as the basis for awarding of prejudgment interest in a wrongful conduct case). We hold that in order to fully compensate Davis, the trial court should have awarded prejudgment interest in the judgment from the date that Twin City refused to pay her claim.

 Twin City erroneously suggests that *Cavnar* requires that interest in the present case should be calculated starting six months after the date the obligation accrued. The court in *Cavnar* limited this requirement to cases of personal injury and wrongful death wherein damages accrue intermittently. *Cavnar*, 696 S.W.2d at 555. The court in *Cavnar* additionally held that prejudgment interest in survival actions accrues from the time of death because all of the decedent's damages must necessarily have accrued by that time. *Id.* In other words, if all the plaintiff's damages accrue at an ascertainable amount on the date of the injury, then pre-

judgment interest is calculated from that date. *See Id.; see also Prudential Ins. v. Jefferson Associates*, 839 S.W.2d 866 (Tex. App.—Austin 1992, writ granted). In the present case, all of Davis's damages accrued at the time Twin City refused to pay her claim, thus violating a tort duty, i.e. on January 25, 1989. Prejudgment interest should be awarded and calculated from that time.

 The jury found that actual damages in the present case amounted to $3,500. Prejudgment interest is not available on exemplary damages. *Cavnar*, 696 S.W.2d at 555. The trial court should have awarded Davis prejudgment interest on the amount of actual damages calculated at 10% per annum and compounded annually from January 25, 1989. It is appropriate to establish the prejudgment interest at the same rate as the post-judgment interest in accordance with the standards set forth in Article 5069–1.05 and *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747. This point of error is sustained.

### COMPUTATION OF DAMAGES

 In regard to the issue of damages, Davis contends that she is entitled to punitive damages for Twin City's violation of the duty of good faith and fair dealing *and* a 12% penalty for Twin City's violation of the Workers' Compensation Act *and* attorney's fees for either Twin City's Workers' Compensation violation, its DTPA violation, or its Insurance Code violation. The trial court awarded Davis a 12% penalty under Tex.Rev. Civ.Stat.Ann. art. 8307, § 5a *Repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10) to (12), 1989 Tex.Gen.Laws 114 (current version at Tex.Rev.Civ.Stat.Ann. art. 8308–6.45 (Vernon Supp.1993)).[4] The trial court also awarded Davis attorney's fees calculated at 33% of the actual damages, but the court did not specify the legal basis for this award.

Article 8307, § 5a of the Workers' Compensation Act states, in relevant part, that when a workers' compensation carrier fails to comply with a court approved agreed judg-

---

4. The version of Article 8307, § 5a at issue in the present case was effective June 14, 1985, and it was repealed January 1, 1991.

ment the claimant may bring suit to collect "the full amount of indemnity compensation provided for in the settlement or judgment [as well as] a twelve per cent penalty and a reasonable attorney's fee." In the present case, a county court at law judge signed an agreed judgment on December 14, 1987 based on the compromise settlement agreement between Davis and Twin City.

■ Twin City contends that Davis cannot receive both the penalty and the exemplary damages because this would penalize it twice for the same conduct and provide Davis with a double recovery. Davis responds that Twin City has waived any such argument by failing to make a cross-point on the issue in its original appellate brief. Under Rule 324(c) of the Texas Rules of Civil Procedure, when a judgment is rendered notwithstanding certain findings of the jury the appellee must bring forward by cross-points such grounds as would vitiate the judgment if it had been rendered in harmony with the verdict. Davis argues that a judgment rendered in harmony with the verdict would have included both the penalty and attorney's fees and thus an attack on those awards would vitiate such a judgment. However, the jury did not find that the penalty or the attorney's fees should be awarded; it merely found that Twin City failed to pay the claim and that a reasonable attorney's fee was 33% of the recovery. The trial court charged the jury under several theories of recovery, a number of which might have entailed the recovery of attorney's fees and at least one of which did not, namely the common law tort. The role of the trial court is to apply the law regarding computation and election of damages to the findings of the jury. Thus, the dispute in this case is not over what the jury did; rather, the dispute involves the question of what judgment the trial court should have rendered in harmony with the verdict. In other words, Twin City does not raise any argument on appeal that would vitiate a judgment rendered in harmony with the verdict, but Twin City does dispute the substance that such a judgment would include. Rule 324(c) is not applicable to the present case.

In regard to the substantive issue of computation of damages, we first consider whether it is possible to recover both a penalty under Article 8307, § 5a and exemplary damages under a common law tort in the same suit. The penalty is imposed under Article 8307, § 5a based on Twin City's failure to pay Davis's claim. The exemplary damages were also based, in part, on that same action of denying the claim, but the exemplary damages were also based on other conduct perpetrated by Twin City against Davis in denying payment: Twin City told Davis that her file had been reviewed by an orthopedist who deemed the hot tub unnecessary when in fact no such review had occurred, and when the review later came back recommending the hot tub, Davis was not informed of this development. Without proving this additional conduct, Davis could not have recovered under her tort claim.

■ In *Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 821 (Tex.App.—Corpus Christi 1988, no writ), the court held that the claimant could recover both exemplary damages for a breach of the duty of good faith and fair dealing and a 12% penalty under Article 3.62 of the Texas Insurance Code. The court explained that the simple denial of the claim was not the same act as the whole of the actions constituting bad faith so that the insurance company was not being twice punished for the same act. *Id.;* see also *Mayo v. John Hancock Mut. Life Ins. Co., Etc.,* 711 S.W.2d 5 (Tex.1986) (treble damages under DTPA and 12% penalty under Insurance Code deemed to not be based on same act). We hold that this is a proper case in which both exemplary damages under tort law and a 12% penalty under Article 8307, § 5a should be awarded.[5]

---

5. Twin City waived any argument that Article 8307, § 5a does not apply to medical expenses not specifically approved by the board or the court when it failed to raise a point of error challenging the trial court's judgment applying the article to the medical expenses in this case. *But cf. Barnes v. Bituminous Casualty Corp.,* 495 S.W.2d 5 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *General Accident Fire & Life Assur. Corp. v. Hames,* 416 S.W.2d 894 (Tex.Civ.App.—Dallas 1967, no writ). A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error. *Texas National Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986).

Davis contends additionally that the trial court's award of attorney's fees should be expanded to a percentage of her entire recovery, including the exemplary damages, even though she only pleaded for attorney's fees based on her actual damages. Jury question number 15 asked: "What is a reasonable fee for the necessary services of Faith D. Davis's attorney in this case, stated as a percentage of Faith D. Davis's recovery?" The jury answered "33%," and Davis contends that the term "recovery" includes the whole of her recovery and not just actual damages. We agree. The most relevant definition of "recovery" offered by Black's Law Dictionary defines it as "[t]he amount finally collected, or the amount of judgment." BLACK'S LAW DICTIONARY 1276 (6th ed. 1990). We therefore hold that the term "recovery" includes the entire amount the jury awarded Davis and not just the actual damages.

While it is true that Davis pleaded only "for attorney's fees in a sum not to exceed one-third (⅓) of the actual damages awarded by the trier of fact," Davis has not preserved a right to complain on appeal about the inconsistency between the jury's verdict and the pleadings. Rule 324(c) of the Rules of Civil Procedure mandates that after we have set aside the judgment non obstante veredicto we must enter a judgment in harmony with the jury's verdict unless cross-points have been brought that would vitiate the verdict. *De Los Santos v. Alamo Lumber Co.*, 683 S.W.2d 48 (Tex.App.—San Antonio 1984, no writ). No such cross-points were brought by Twin City; therefore, Twin City has waived any right to complain about the failure of Davis to properly plead the amount of attorney's fees that she recovered under the jury's verdict. Thus, Davis is entitled to the jury's finding on attorney's fees, 33% of Davis's recovery, which is $34,488.

Because of our disposition of these points of error, we do not reach Davis's other points of error.

We modify the judgment to reflect an award of punitive damages. Davis shall recover $3,500 in actual damages, exemplary damages of $100,000, a penalty of $420, attorney's fees in the amount of $34,488, prejudgment interest at the rate of 10% per annum compounded annually on the actual damages, and post-judgment interest at the rate of 10% per annum compounded annually on the total recovery. We modify the judgment of the trial court in accordance with the foregoing determinations and, as modified, we affirm.