Brooks ARMSTRONG, Appellant,

v.

Robert Edward RANDLE, Administrator of the Estate of Beth Ann Randle, Deceased, and Robert Edward Randle, Guardian and Next Friend of Robert Ryan Randle, a Minor, Appellees.

No. 06–93–00021–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 24, 1994.

Decided June 28, 1994.

Rehearing Denied Aug. 9, 1994.

Ronald S. Gutierrez, Austin, for appellant.

Edward E. Ellis, Ellis & Clark, Paris, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is a civil wrongful death action against Brooks Armstrong for causing the death of Beth Ann Randle, the mother of Robert Ryan Randle. Robert Edward Randle (Ryan Randle's father and Beth Ann Randle's former husband) filed the suit as administrator of Beth Ann Randle's estate and as Ryan Randle's next friend. Armstrong was convicted of murdering Beth Randle and was sentenced to life in prison. His conviction was subsequently affirmed by this court.[1] In this civil suit, the trial court, based on a jury verdict, awarded the Randles $491,700.00 actual damages and $5,000,000.00 exemplary damages, plus prejudgment and post-judgment interest.

■ In Armstrong's first two points of error, he contends that the trial court improperly denied his application for writ of habeas corpus ad testificandum.[2] He first contends that this denial violated the Texas Constitution's open courts provision.

■ The open courts provision provides: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." The provision is one of the two due course of law provisions of our Constitution, the other being the due course

---

1. The conviction was initially affirmed in *Armstrong v. State*, 838 S.W.2d 323 (Tex.App.—Texarkana 1992), a judgment subsequently vacated in *Armstrong v. State*, 845 S.W.2d 909 (Tex.Crim. App.1993). On remand the conviction was again affirmed by this court. *Armstrong v. State*, 850 S.W.2d 230 (Tex.App.—Texarkana 1993, pet. granted).

2. "The writ, meaning 'you have the body to testify', used to bring up a prisoner detained in a jail or prison to give evidence before the court." BLACK'S LAW DICTIONARY 710 (6th ed. 1990).

of law provision of Article I, § 19.[3] Due course of law, as used in Section 19, has traditionally been viewed as co-extensive with the United States Constitution's due process of law guarantee.[4] *See Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887); *In re Estate of Touring*, 775 S.W.2d 39, 42 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 113–14 (Tex.App.—Austin 1985, no writ).

■ The open courts provision is not co-extensive with the due course of law provision. *Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex.1984). Although both provisions guarantee due process, the open courts provision, TEX. CONST. art. I, § 13, establishes a substantial right, independent of TEX. CONST. art. I, § 19 and other constitutional provisions. *Id.* The provision includes at least three separate constitutional guarantees: (1) courts must actually be operating and available; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers, and (3) meaningful remedies must be afforded and the Legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress. *Trinity River Auth. v. URS Consultants, Inc.–Texas*, 37 Tex.Sup.Ct.J. 742, 743, 1994 WL 152324

(Apr. 28, 1994). The common theme of these guarantees is that the *Legislature* may not by *statute* impede access to the courts. *See Texas Ass'n of Business v. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex.1993).

■ In this case Armstrong challenges the discretionary act of a trial judge, not a legislative enactment. The open courts provision is therefore inapplicable to this issue. *See Peeler v. Hughes & Luce*, 868 S.W.2d 823, 834 (Tex.App.—Dallas 1993, writ requested). Even if, for the purposes of argument, we assume that the open courts provision applies to this issue, our analysis is complicated by the fact that case law analysis under the open courts provision, which we would normally review for guidance, is not helpful because it and the tests applied invariably deal with statutory restrictions.[5] We will, however, use that authority to address Armstrong's open courts complaint.

■ A party may not be denied access to the courts merely because he is an inmate. *See Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393, 401 (1984). There is, however, no absolute right for an inmate to appear in court in a civil case.[6] *See Pruske v. Dempsey*, 821 S.W.2d 687, 689 (Tex.App.—San Antonio 1991, no writ); *Nichols v. Martin*, 776 S.W.2d 621, 623 (Tex. App.—Tyler 1989, orig. proceeding); *Birdo v. Holbrook*, 775 S.W.2d 411, 414 (Tex.App.—

---

**3.** TEX. CONST. art. I, § 19 reads: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

**4.** The supreme court, however, has just recently stated: "[O]ur Texas due course of law guarantee ... has independent vitality, separate and distinct from the due process clause of the Fourteenth Amendment to the U.S. Constitution." *In re J.W.T.*, 872 S.W.2d 189, 197 (1994). The court also noted the language of "the Texas due course constitutional provision is different from, and arguably significantly broader than, the language of the corresponding federal provisions." *Id.* at 197 n. 23. *J.W.T.* deals with the issue of whether, under the Texas Constitution's due course of law provision, a biological father may be denied an opportunity to establish his paternity and claim parental rights. Presumably, interpretation of the due course of law provision in other areas will continue to be as traditionally applied until the court chooses to provide the lower

courts with additional guidance. For further discussion of the possible implications of the supreme court's decision, see Justice Cornyn's dissent, 872 S.W.2d at 202.

**5.** The supreme court has held on a number of occasions that to establish an open courts violation a litigant must satisfy a two-part test: First, it must be shown that the litigant has a cognizable common law cause of action that is being restricted. Second, the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Trinity River Auth. v. URS Consultants, Inc.–Texas*, 37 Tex.Sup.Ct.J. 742, 743 (Apr. 28, 1994); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990); *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex.1983).

**6.** *See* Jay M. Zitter, Annotation, *State Prisoner's Right to Personally Appear at Civil Trial to Which He Is a Party–State Court Cases*, 82 A.L.R.4th 1063 (1990), and cases cited therein.

Fort Worth 1989, writ denied); *Brewer v. Taylor*, 737 S.W.2d 421, 423–24 (Tex.App.— Dallas 1987, no writ); *Doyle v. Doyle*, 482 S.W.2d 285, 286 (Tex.Civ.App.—Beaumont 1972), *cert. denied*, 409 U.S. 855, 93 S.Ct. 195, 34 L.Ed.2d 100 (1972). In considering an inmate's right to appear, the courts generally follow a balancing approach—weighing the preservation of the correctional system's integrity against the prisoner's right of access, with a goal of achieving a balance that is fundamentally fair. *Brewer v. Taylor*, 737 S.W.2d at 423–24. Review of trial court decisions on this issue has been under an abuse of discretion standard. *See id.* at 424.

■ There is a clear distinction between the right of access to the judicial system and the right to personally appear. If the inmate and his counsel are afforded adequate opportunity to confer confidentially and to petition the courts about the matters in controversy, the inmate's right of access is satisfied. *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976), *cited with approval in Brewer v. Taylor*, 737 S.W.2d at 423. In *Stone*, the court listed a number of factors that should be considered in balancing the inmate's rights against the integrity of the correctional system. They include: (1) the cost and inconvenience of transporting the inmate to court; (2) the security risk and danger to the court and the public by allowing the inmate to attend court; (3) whether the inmate's claims are substantial; (4) whether a determination of the matter can reasonably be delayed until the inmate is released; (5) whether the inmate can and will offer admissible, noncumulative testimony that cannot be offered effectively by deposition, telephone, or otherwise; (6) whether the inmate's presence is important in judging his demeanor and credibility compared with that of other witnesses; (7) whether the trial is to the court or to a jury; and (8) the inmate's probability of success on the merits. *Stone v. Morris*, 546 F.2d at 735–36, *cited with approval in Pruske v. Dempsey*, 821 S.W.2d at 689, and *Brewer v. Taylor*, 737 S.W.2d at 423. But the key factor is whether the inmate is represented by counsel. *Pruske v. Dempsey*, 821 S.W.2d at 689. The court in *Pruske* noted that the inmate was a defendant in the action, that he had made it clear well in advance that he denied the plaintiff's claims and wished to either have an appointed attorney or to represent himself, and that the trial court's denial of his requests resulted in a post-answer default judgment. Based on these reasons, the court reversed the trial court's post-answer default judgment with the order that, on remand, the trial court review the *Stone* factors and apply the balancing test to determine if the inmate was entitled to appear.

■ Only where an inmate has been effectively barred from presenting his case, such as in *Pruske* or in *Nichols*, wherein a pro se inmate was refused the right to appear in court, has an appeals court been willing to find error in the denial of an inmate's request to personally appear. The Dallas court's holding in *Brewer*, which sets out the balancing test and factors noted above, appears to be the model followed by the other Texas courts of appeals in recent decisions.

■ Armstrong relies on several cases addressing the general right of a *litigant* to appear in court. The issue here, however, is the right of an *inmate* to personally appear at a civil trial. Armstrong argues that, because he did not initiate this civil suit, he should be allowed to personally appear, noting that in most of the reported cases the prisoner was the plaintiff. Although whether an inmate is a plaintiff or a defendant in an action is certainly a factor for the courts to consider,[7] we do not find it dispositive of this issue. In those cases in which the courts found error in the denial of an inmate's right to personally appear, the ruling was not based solely on the fact that the inmate was a defendant, but was based on additional reasons, viz., the inmate had no lawyer, was proceeding pro se, or was denied the right to communicate with his lawyer, all of which effectively barred his access to the courts. *See Pruske v. Dempsey*, 821 S.W.2d at 688–89; *National Ins. Co. of America v. Broome*, 401 S.W.2d 862, 864–65 (Tex.Civ.App.—Tyler

---

7. The Dallas court in *Brewer* was careful to note, "a prisoner has no right to appear in a civil case he has initiated...." *Brewer v. Taylor*, 737 S.W.2d 421, 424 (Tex.App.—Dallas 1987, no writ) (emphasis added).

**58**

1966, writ ref'd n.r.e.). The fact that an inmate initiates the action does not necessarily preclude his appearance in person, the issue again being whether his access to the courts is effectively barred. *See Nichols v. Martin*, 776 S.W.2d at 622–23.

In this case, Armstrong was represented by counsel from the very beginning of the action. The transcript and record at trial show that his counsel presented an active and aggressive defense both before and at trial.

Armstrong argues that he was the only witness who could contest the plaintiffs' claims that he intentionally killed Randle and that, because of his incarceration, he was denied the ability to communicate with and assist his counsel in presenting his defense. He fails to show, however, the substance of any testimony he would have given, or how such testimony would have affected the jury's verdict. He does not show why such testimony could not have been given by deposition, telephone, affidavit, or otherwise, *see Brewer v. Taylor*, 737 S.W.2d at 424. He also has not shown that he was denied an opportunity to communicate with his attorney.

Armstrong did not file his application for the writ until the first day of the civil trial, June 22, 1992, although his attorneys filed various answers, motions, interrogatories, and requests during the nine-month period between the original complaint and the trial and obviously had the opportunity to file such an application well in advance of the trial. Armstrong and his counsel were aware of the lawsuit and had sufficient advance notice of the date of the trial. Indeed, in response to Armstrong's application, opposing counsel argued without objection that the trial setting had been known to the parties for several weeks. According to the application, Armstrong was, at the time the application was filed, incarcerated in the Walls Unit of Huntsville in Walker County. Transporting Armstrong from his place of confinement

to the courtroom in Lamar County would have obviously entailed some cost and inconvenience. *See Brewer v. Taylor*, 737 S.W.2d at 424. Armstrong's untimely filing could, therefore, have reasonably been viewed by the trial court as simply an effort to delay the trial.

Armstrong did not timely file his application; he does not show what his testimony would have been, how it would have affected the outcome of the trial, or why it could not have been presented at trial by deposition, affidavit, telephone, or otherwise; he was represented by counsel and does not show the presentation of his defense was affected by his absence; and he was not effectively barred from access to the courts or from defending the lawsuit. Given those facts, the trial court did not abuse its discretion in denying his application. Armstrong has clearly failed to show that the court acted without regard for guiding rules and principles or acted arbitrarily and unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

Armstrong also contends that the denial of the writ violated the due course of law provision of TEX. CONST. art. I, § 19 and the due process clauses of U.S. CONST. amends. V and XIV. At trial, however, Armstrong did not raise these provisions as grounds for his complaint. In his written application Armstrong argued that to deny him the opportunity to be present at trial would violate the Texas constitutional and statutory provisions against outlawry,[8] and before the trial court he orally argued that a denial would violate the open courts provision. He thus waived these complaints. Even constitutional arguments are waived at the appellate level if the issue or issues were not before the trial court. TEX.R.APP.P. 52(a); *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex.1986). Even if not waived, the discussion of Armstrong's open

---

**8.** Because Armstrong does not on appeal brief and argue the constitutional and statutory provisions of outlawry, TEX. CONST. art. I, § 20; TEX. CODE CRIM.PROC.ANN. art. 1.18 (Vernon 1977), this argument is not preserved. Grounds of error not

asserted by points of error or argument in the courts of appeals are waived. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991).

courts argument would dispose of these complaints as well, because the above discussion is actually based on due process grounds.

In his third point of error, Armstrong contends that the exemplary damages awarded by the jury are excessive and violate his right to due process under both the United States and Texas Constitutions. Specifically, he argues that because the exemplary damages were in excess of ten times the compensatory damages, the award is the result of jury passion or bias.

■■■ An award of grossly excessive damages may violate a defendant's substantive due process rights. *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. ———–——, 113 S.Ct. 2711, 2717–2719, 125 L.Ed.2d 366, 376–77 (1993) (plurality opinion). Exemplary damages must be reasonably proportioned to actual damages, but there is no set ratio between the amount of actual and exemplary damages that will be considered reasonable. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). Reasonableness is a determination that depends on the facts of each case. *Id.* Factors to be considered in determining whether an award is reasonable include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* In determining whether damages are excessive, the trial courts and courts of appeals should employ the same test as for any factual insufficiency question. *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986).

■■■ Armstrong argues that the mere fact that the award of exemplary damages— $5,000,000.00—is in excess of ten times that of the award of actual damages is enough to indicate that the jury award was the result of passion or bias. As noted, however, there is no set ratio for what is excessive. Indeed, in *Alamo Nat'l Bank,* the landmark decision establishing the current rules for reviewing exemplary damages, the separate exemplary damage awards against each defendant were almost twenty times the amount of the actual damages. *See Alamo Nat'l Bank v. Kraus,*

616 S.W.2d at 909–10. Recently, this court affirmed an award of exemplary damages where the ratio of exemplary damages to actual damages was 28.6 to 1. *Davis v. Twin City Fire Ins. Co.,* 865 S.W.2d 231, 237 (Tex. App.—Texarkana 1993, writ requested).

■■■ We find the evidence sufficient to support the amount of exemplary damages. The jury found that Armstrong intentionally killed Beth Ann Randle. The testimony showed that Randle and Armstrong had lived together; that their relationship was stormy and at times violent; that on the day of the murder Armstrong had been drinking heavily; that he had a tendency to be violent when drinking; that he admitted shooting Randle; and that he shot Randle twice, first in the chest from in front and second while she was lying on the floor, in the back of the head.

The defense offered testimony disputing the testimony of several of the State's witnesses about Armstrong's propensity for violence and his problems with alcohol. The defense also offered testimony about Armstrong's claim that Randle had tried to shoot him and the gun had gone off. At most, however, the evidence is conflicting and is clearly legally and factually sufficient to support the jury's award. *Pope v. Moore,* 711 S.W.2d at 624.

The actual damages of $491,750.00 were based on Beth Ann Randle's pain and suffering, the loss (pecuniary and familial) suffered by Ryan Randle, and the mental anguish suffered by Ryan Randle. Armstrong does not contest the award of actual damages.

The punitive damages are reasonably proportional to the actual damages. Given the evidence presented and the nature and character of the wrong, the degree of culpability, the relationship between Ryan and Randle, and the extent to which murder profoundly offends a public sense of justice, the amount of exemplary damages awarded is not unreasonable. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d at 910.

The judgment of the trial court is affirmed.

BLEIL, Justice, concurring.

I wholly concur in the court's decision and opinion, but write separately to emphasize

that there are several modern-day rules which require this outcome. And it is Armstrong or his attorney—not the State of Texas as claimed—who prevented Armstrong from appearing in court.

A pretrial conference was held in this case pursuant to Rule 166 of the Texas Rules of Civil Procedure. At that conference his attorney did not seek Armstrong's presence at the trial.

His request for a writ of habeas corpus ad testificandum filed on the day of trial was untimely and could have been denied on that basis. Furthermore, his request was tantamount to a motion for continuance. In addition to being untimely, it was unsworn and stated no basis why Armstrong's presence was needed. Rules 251 and 252 of the Texas Rules of Civil Procedure, governing motions for continuance based on the absence of a witness, require support in the form of an affidavit showing what the testimony would be and its materiality. Armstrong made no such showing. Additionally, Armstrong has not preserved any complaint on appeal because he has not shown what his testimony would have been had he been called as a witness. TEX.R.APP.P. 52(a).

If we were to hold that the trial court erred under the present circumstances, we would be saying that neither civil litigants who happen to be incarcerated nor their attorneys (no matter how well qualified) are required to follow the procedural rules of Texas.

GRANT, Justice, concurring.

I concur in the result only.