In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00178-CV


______________________________








IN THE MATTER OF THE MARRIAGE OF


JOE LEE BUSTER AND MOLLIE ANN ALLISON






 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01D0915-202




 




Before Ross, Carter and Cornelius,* JJ.


Opinion by Justice Cornelius


Concurring Opinion by Justice Carter


________________________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Joe Lee Buster, an inmate of the Texas Department of Corrections, acting pro se throughout
these proceedings, filed suit in the 202nd Judicial District Court of Bowie County for a divorce from
his wife, Mollie Mae Allison. Buster was unable to secure service of process on Allison or secure
a waiver of service from her because he could not ascertain her whereabouts. Because he could not
cite her by publication or appear in the proceeding personally, his divorce petition remained on the
trial court's docket for approximately sixteen months until the trial court dismissed it for want of
prosecution.

 Buster appeals from the judgment of dismissal, contending that, even though he was
incarcerated during all the relevant times and could not attend to his case personally, he made
repeated and diligent efforts to secure citation by publication, (1) produce the necessary testimony by
alternative means, and secure an adjudication of his case. He thus argues that the trial court abused
its discretion by dismissing his case despite his diligence in attempting to bring the case to trial. We
agree for the following reasons.

 Buster filed his petition for divorce on June 11, 2001. In his petition, he alleged that he was
incarcerated in the Eastham Unit, Texas Department of Criminal Justice-Institutional Division; that
he was a resident of Bowie County, Texas, when the petition was filed; that Allison's whereabouts
were unknown and requested that the clerk issue citation if her location could be ascertained; that
he and Allison were married on September 1, 1994, and ceased to live together as man and wife on
or about May 17, 1995; that the marriage had become insupportable because of discord and conflicts
that destroyed the legitimate ends of the marriage; that the parties had no children and none was
expected; there was no need for a division of property because Buster relinquished all right and title
to any and all property, separate and community, acquired by either of the parties before or during
the marriage; that Allison's maiden name be restored to her; and that the court issue citation to
Allison.

 On the same date the petition was filed, the court entered the standard protective order
entered by the courts of Bowie County in all divorce actions. Also on the same day, Buster filed an
affidavit of testimony setting out verified facts supporting the allegations of the petition and filed an
affidavit of indigency and a request to proceed in the case in forma pauperis. On September 17,
2001, Buster filed a written request to the clerk reiterating that he could not afford to pay costs or
obtain service on Allison, and asked the clerk to request the trial court to rule on his divorce and his
ancillary motions. On February 4, 2002, Buster filed another request with the clerk inquiring into
the status of his case and seeking "proper due process procedures by this court." In this letter, he
stated that he was incarcerated and indigent and unable to pay filing fees or acquire defense counsel;
requested that the divorce be acted on as "discreetly and expeditiously as possible"; that he did not
have the money to post citation by publication or pay an officer of the court to post citation; and
requested the court for "assistance." He asked the clerk to "please respond to this letter and give me
an answer to . . . what can I do to get this done?" On February 25, 2002, Buster filed a "Motion for
Appointment of Attorney Ad Litem and for the Clerk to post public notification to Respondent." On
the same day, Buster filed a motion for writ of habeas corpus ad testificandum asking to be brought
before the trial court personally for trial of the divorce action.

 None of these motions or requests by Buster was acted on by the trial court. Instead, on
October 8, 2002, the clerk sent Buster a notice that, pursuant to Tex. R. Civ. P. 165a, the trial court
would conduct a hearing on October 21, 2002, and would dismiss Buster's case for want of
prosecution unless Buster or an attorney appeared in person and showed good cause for maintaining
the case on the docket. Buster did not appear and was not represented by counsel at the hearing. On
October 21, 2002, the court dismissed Buster's case "for want of prosecution."

 Thereafter, on November 5, 2002, Buster filed a motion for new trial and a request for leave
to appeal. On the same day, and within the plenary power of the trial court, Buster filed his notice
of appeal.

 A trial court has the inherent power to dismiss a case for want of prosecution, but express
authority to do so is also given by Rule 165a in cases where a party plaintiff fails to appear for any
scheduled hearing, or when the case is not disposed of within the time standards set by the Texas
Supreme Court. Tex. R. Civ. P. 165a; Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628,
630 (Tex. 1999). Rule 165a also provides a procedure for reinstatement of causes dismissed for
failure to appear at any hearing. See Tex. R. Civ. P. 165a(3). The courts have held, however, that
the reinstatement provision applies only to cases dismissed for failure to appear, not to cases
dismissed for want of prosecution. Burton v. Hoffman, 959 S.W.2d 351 (Tex. App.-Austin 1998,
no pet.); Clark v. Yarbrough, 900 S.W.2d 406 (Tex. App.-Texarkana 1993, writ denied). The
standard for reviewing a dismissal for want of prosecution is abuse of the courts discretion, whereas
the test for reinstatement of a case dismissed under the failure to appear provision of Rule 165a is
mistake or accident on the part of the aggrieved party. Burton v. Hoffman, 959 S.W.2d 351. 

 Buster did not file a verified petition to reinstate as required by Rule 165a(3), but in his
motion for new trial, he requested several actions, including the reinstatement of his case. In this
appeal, however, he does not complain specifically of the trial court's failure to reinstate his case,
but only of the court's action in dismissing his case. To appeal from a dismissal for want of
prosecution, it is not necessary to perfect an appeal from a denial of a motion to reinstate, and the
appeal is from the order of dismissal. Hosey v. County of Victoria, 832 S.W.2d 701 (Tex.
App.-Corpus Christi 1992, no. writ).

 There is no absolute right for an inmate to appear in court in person in a civil case. 
Armstrong v. Randle, 881 S.W.2d 53, 57 (Tex. App.-Texarkana 1994, writ denied). In considering
an inmate's right to appear, courts generally follow a balancing approach, weighing the preservation
of the correctional system's integrity against the prisoner's right of access, with a goal of achieving
a balance that is fundamentally fair. Ex parte Guajardo, 70 S.W.3d 202, 205 (Tex. App.-San
Antonio 2001, no pet.). Should the trial court find that the pro se plaintiff inmate in a civil suit is
not entitled to leave prison and appear personally in court, the inmate should be allowed to proceed
by affidavit, deposition, telephone, or other effective means. In re Marriage of Daugherty, 42
S.W.3d 331 (Tex. App.-Texarkana 2001, no pet.); Byrd v. Attorney Gen. of Tex., Crime Victim's
Comp. Div., 877 S.W.2d 566, 569 (Tex. App.-Beaumont 1994, no writ).

 A trial court may dismiss a civil suit for want of prosecution when the plaintiff has failed to
use reasonable diligence to advance the case on the docket and move it to trial. Villarreal v. San
Antonio Truck & Equip., 994 S.W.2d at 630; Dolenz v. Cont'l Nat'l Bank of Fort Worth, 620 S.W.2d
572, 575 (Tex. 1981); City of Houston v. Thomas, 838 S.W.2d 296, 297 (Tex. App.-Houston [1st
Dist.] 1992, no. pet.). Although a pro se litigant is held to the same standards as a licensed attorney
as far as knowledge of the rules of practice and procedure are concerned, Mansfield State Bank v.
Cohn, 573 S.W.2d 181, 185 (Tex. 1978), the level of reasonable diligence for prison inmates is
somewhat lower than that for litigants who are free and represented by counsel. Inmates cannot
personally appear unless the court orders the prison officials to allow it, and if the inmates are pro
se, their ability to participate in the activities designed to bring their cases to trial is seriously limited.

 It appears to us that Buster did everything he could reasonably do to diligently prosecute his
case. He asked for the right to appear personally and to proceed by affidavit or other alternative
means of giving the required testimony if he could not be present personally. He asked the trial court
for the appointment of an attorney, so he could complete service on the respondent. (2) He asked for
permission to proceed in forma pauperis, and he repeatedly asked for assistance in getting his
divorce adjudicated. As noted earlier, the trial court did not act on any of these requests. Seemingly,
there was a complete breakdown in communication between the trial court and Buster, and because
of Buster's status as an indigent and an inmate, he could not reasonably remedy the situation. Under
all these circumstances, we conclude that the trial court abused its discretion when it dismissed
Buster's case for want of prosecution. Compare Clark v. Yarbrough, 900 S.W.2d 406; Fedco Oil
Co. v. Pride Refin. Co., 787 S.W.2d 572 (Tex. App.-Houston [1st Dist.] 1990, no writ).

 The judgment is reversed, and the cause is remanded to the trial court for further proceedings.


 William J. Cornelius*

 Justice


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.



CONCURRING OPINION


 I acknowledge the majority opinion correctly applies the current law to the facts presented. 
I write to suggest that the practical application of these legal requirements is difficult for the trial
officials to accomplish and to offer a suggested solution. 

 When representing themselves in our courts, most citizens are expected to comply with
certain rules. They are required to obtain service of process, obtain a trial setting, appear at the stated
time to present evidence, and prepare proposed orders for entry even though they do not have legal
training. The trial courts of this State cannot act as an advocate for any party appearing in court. 

 Clearly, incarcerated persons cannot attend court proceedings without intervention by the trial
court. Apparently, Buster is now incarcerated miles away from the forum of this case. In this age
of technology, a solution to many of these problems would be video conferencing. I would urge the
Legislature to consider action which would authorize and fund video access from the state
penitentiaries to a trial court in each county where an institution is located. This would solve the
very real security problem and expense of travel while allowing the inmates the right to access our
courts. 


 Jack Carter

 Justice


Date Submitted: February 20, 2003

Date Decided: August 5, 2003
1. See Tex. Fam. Code Ann. § 6.409 (Vernon 1998).
2. In a civil case, the trial court may appoint counsel for a party if the party makes an affidavit
that he or she is too poor to employ counsel to attend to the case. Tex. Gov't Code Ann. § 24.016
(Vernon 1988); Coleman v. Lynaugh, 934 S.W.2d 837 (Tex. App.-Houston [1st Dist.] 1996, no
writ).



ent.


 Mr. Smith has reviewed the photographs of the vehicles involved, the accident report
prepared by the police officer that investigated the collision, and copies of vehicle
repair estimates. He has been or will be furnished with depositions of fact witnesses
in this case. Mr. Smith is expected to testify that the road conditions at the time of
the occurrence in question were not hazardous and that the failure of Tony Lee
Waggoner to keep a proper lookout, failure to make a proper application of his
brakes, and failing to make a timely application of his brakes was negligence and the
proximate cause of the occurrence in question.


 Mr. Smith's curriculum vitae is attached as Exhibit A and a copy of his Preliminary
Report is attached as Exhibit B.


 McDowell's discovery response discloses that Smith would testify regarding "all aspects of
the accident investigation and reconstruction," which would certainly include the forces exerted on
McDowell that could cause his injury. Regarding Smith's qualifications as an expert in
biomechanics, Smith's CV recites that he has been associated as a staff engineer with Raymond P.
Smith and Associates in Denver, Colorado, since December 1991. In that capacity, he performs
accident investigations and reconstructions and analyses of "occupant kinematics/injury
mechanisms" and biomechanics. 

 Smith testified he listed in his CV, under the heading "Continuing Education," the courses
and seminars he took in pursuit of his master of science degree in biomechanics. The continuing
education courses listed in Smith's CV include "Head & Neck Injury Symposium," "Accidental
Injury: Biomechanics & Prevention," "Biomechanics of Accidents," "Whiplash Symposium," and
attendance at the twenty-first through twenty-sixth "International Workshop[s] on Human Subjects
for Biomechanical Research." Smith's CV also reveals he has written an article titled "The Physics,
Biomechanics and Statistics of Rear Impacts," and given speeches titled "Biomechanics,"
"Biomechanics and Accident Reconstruction," "Principles of Accident Reconstruction: Physics and
Biomechanics," and "Countering the Opposition's Biomechanical Expert."

 Smith's preliminary report recites Smith's conclusion that, "The injuries reported are
consistent with the applied forces in the collision." The City contends, however, that "a report is not
a 'discovery response' as envisioned by Rule 193.6." The City's contention overlooks the fact that
Smith's report was included as an attachment to McDowell's discovery response. Given the above
disclosures, we conclude that the City had sufficient notice of the possible scope of Smith's
testimony.

 In its second issue, the City contends there was no evidence or insufficient evidence to
support the jury's finding that the 1993 collision was the cause of McDowell's injury and that the City
was completely responsible. In determining whether there is no evidence of probative force to
support a jury's finding, we must consider all of the evidence in the light most favorable to the party
in whose favor the verdict has been rendered, and we must indulge every reasonable inference that
can be deduced from the evidence in that party's favor. Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997). We will sustain a no-evidence issue when (a) there is a complete
absence of evidence of a vital fact; (b) we are barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital
fact. Id. More than a scintilla of evidence exists when the evidence supporting the finding, as a
whole, rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions. 

 When considering a factual sufficiency challenge to a jury's verdict, we consider and weigh
all of the evidence, not just the evidence supporting the verdict. Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402, 406-07 (Tex. 1998). We set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence that it is clearly wrong and unjust. Id. We are not a fact-finder. Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for the
jury's, even if the evidence would clearly support a different result. 

 McDowell called as witnesses two neurosurgeons who had examined him. Dr. James Bland
testified he first saw McDowell in October 1993, after the 1993 collision with the City vehicle; 
again in January 1996; and a third time in January 1997, after the 1996 collision with Davidson. 
Dr. Charles Gordon testified McDowell was referred to him in 1999.

 Both Bland and Gordon testified McDowell complained of pain between his shoulder blades
and down his back. Both reviewed magnetic resonance imaging (MRI) scans and a myelogram. 
Both doctors concluded McDowell had a herniated disk between his fifth and sixth vertebrae. Both
testified the MRIs showed little change in McDowell's condition since the first MRI was taken in
1993. 

 Bland testified McDowell's injury was, within reasonable medical probability, caused by the
1993 collision with Waggoner, the City's employee. He testified the 1996 collision with Davidson
irritated McDowell's condition by, for a time, increasing his pain, but the collision with Davidson
did not cause a material change in McDowell's condition. Gordon testified that McDowell's injury
was consistent with an injury that could be suffered in an automobile collision. Smith, the accident
reconstruction expert, testified the forces exerted in the collision could have caused McDowell's
injury.

 Both Bland and Gordon admitted that their conclusions were based on McDowell telling
them he did not have pain in his back before the 1993 collision, but had pain afterward. Bland
testified McDowell's experiences of playing four years of college football and attending professional
football camps might cause a degenerative disk condition that would not surface until later. 
However, Gordon testified it would be "highly unlikely" that McDowell would have sustained his
injury playing football and not have known about it or reported it earlier. 

 McDowell testified that on the day of the 1993 collision, he was waiting at a red light
preparing to turn. He testified the impact of the rear-end collision sent his truck forward fifteen to
eighteen feet. He immediately felt a "tingling" in his back. The pain got worse until he eventually
went to the emergency room that evening. 

 McDowell and his wife, Cathy, both testified that McDowell has lived with pain since the
1993 collision. McDowell testified the pain has gotten worse as he has gotten older. He has taken
pain medication and antidepressants consistently since 1993. 

 McDowell testified he had no back problems before the 1993 collision. He testified that in
1984 and 1985, he received thorough physical examinations before attending and being released
from training camps with the Washington Redskins and the Green Bay Packers, respectively, and
had no evidence of back trouble. He testified that after being "cut" at training camp in 1983, he
worked as a painting and construction contractor for several years, which he testified involved
physically demanding work. On cross-examination, however, the City presented a note in
McDowell's medical records from 1990 in which a doctor, who treated McDowell for an ulcer, noted
McDowell's complaints about high back and low back pain, which the doctor characterized as
"musculoskeletal." 

 McDowell testified that in the 1996 collision, Davidson "sideswiped" him. He testified the
collision caused swelling in his back, much like what happens to him after a hard day's work. On
cross-examination, however, he admitted he alleged in his pleadings in his suit against Davidson that
in the 1996 collision, "he was thrown about inside [his] vehicle with unusual force and violence";
that he "suffered blows to [his] head, neck, back and diverse other parts" of his body; that his "entire
body was bruised, battered and contused"; that he suffered "great shock to his nervous system"; that
he suffered great physical and mental pain, suffering and anguish"; and that the injuries he sustained
in that collision are permanent in nature. 

 Reviewing the record in this case, we conclude there is sufficient evidence to support the
jury's finding that the 1993 collision was the cause of McDowell's injury and that the City was
100 percent responsible for those injuries. Bland testified McDowell's injury was caused by the 1993
collision. Gordon testified McDowell's injury was consistent with an injury that could be suffered
in an automobile collision.

 Bland and Gordon both testified McDowell's condition did not change from 1993 to 1999,
even after the 1996 collision. Though McDowell's pleadings in his suit against Davidson alleged
he received serious and permanent injuries in the 1996 collision, the jury was free to give greater
weight to evidence that McDowell's condition did not change from 1993 to 1999. 

 Though both Bland and Gordon agreed that their conclusions depended on the premise that
McDowell did not have a pre-existing back problem, McDowell testified he did not have a back
injury before the 1993 collision. Though there is evidence that McDowell complained of back pain
in 1990, the jury could have rationally believed that complaint arose from some other cause.

 Though the City contends McDowell's injury could have resulted from McDowell's
experience as a football player, the record shows McDowell last played football in 1985 and received
a physical examination on his release that revealed no back injury. Further, Gordon testified it is
highly unlikely that McDowell could have received his injury playing football and not have been
aware of it.

 The judgment is affirmed.



 William J. Cornelius

 Chief Justice


Date Submitted: April 4, 2002

Date Decided: April 26, 2002


Publish
1. The jury awarded nothing for past and future physical pain and mental anguish, nothing for
loss of past earnings, nothing for loss of future earning capacity, $3,000.00 for past physical
impairment, $5,000.00 for future physical impairment, and $8,057.00 for past medical and hospital
care. 
2. McDowell and Davidson later settled.
3. The jury awarded $95,000.00 for past and future physical pain and mental anguish,
$112,600.00 for loss of future earning capacity, $8,000.00 for past physical impairment, nothing for
future physical impairment, $7,680.81 for past medical care, and $25,000.00 for future medical care. 

4. This issue is properly preserved because, at the time the City made its objection, Smith had
not given an opinion concerning whether the force from the collision could cause McDowell's injury.