48 S.W.3d 812 (2001)
In the Interest of B.R.G., a child.
No. 08-00-00132-CV.
Court of Appeals of Texas, El Paso.
May 24, 2001.
*814 Robin Lynn Geer, Odessa, pro se.
John Cornyn, Attorney General, John B. Worley, Assistant Attorney General, Child Support Division, Rhonda A. Pressley, Assistant Attorney General, Child Support Litigation Division, Austin, for Appellee.
Before Panel No. 4: BARAJAS, C.J., LARSEN, and McCLURE, JJ.

OPINION
LARSEN, Justice.
Robin Lynn Geer appeals pro se from the trial court's order finding him liable for child support for his child, B.R.G., and finding he was not entitled to a bench warrant for purposes of testifying at the hearing on this suit affecting the parent-child relationship. We affirm.

FACTS
On June 25, 1999, the Texas Attorney General filed a petition to establish the parent-child relationship between B.R.G. and Geer. The petition sought testing to determine parentage, an order appointing conservators, an order concerning the child's surname, and an order for medical support and child support. On July 9, 1999, the clerk received and filed a letter from Geer stating that he was incarcerated in the Texas Department of Criminal Justice, and asking for a continuance of the September 13, 1999 court date until his expected release date of May 2000. On December 30, 1999, Geer filed an application for writ of habeas corpus ad testificandum for a hearing set for January 12, 2000 in the Midland County Courthouse.
On December 30, 1999, Geer also filed a "Notice to the Court" stipulating that he was the father of the child, but also stating that he was currently incarcerated in the Institutional Division of the Texas Department of Criminal Justice in Beaumont, Texas. He further stated that he was indigent with no legal right or ability to earn monies in which to contribute to the needs of his child, and that he "absolutely has no NET MONTHLY INCOME, NO *815 NET RESOURCES, NO SELF EMPLOYMENT INCOME, NO DEEMED INCOME POSSIBLE, NO WAGE AND SALARY PRESUMPTION POSSIBLE, AND ABSOLUTELY NO LEGAL MEANS IN WHICH TO GENERATE OR EARN ANY INCOME WHATSOEVER."
The court denied Geer's application for writ of habeas corpus ad testificandum, and the hearing on January 12, 2000 proceeded in Geer's absence before a Title IV-D Master. The court set the cause for a non-jury trial on the merits for February 16, 2000, admitted into evidence the results of the parentage testing, appointed Angela Lea Sharp the child's temporary managing conservator, and set child support in the amount of $155 per month.
Geer filed his written objections to this pretrial order and again stated that he had no net monthly income, no net resources, no self-employment income, no deemed income possible, no wage and salary presumption possible, and no legal means by which to generate or earn any income. On February 14, 2000, he again requested a writ of habeas corpus ad testificandum.
The hearing went forward on February 16, 2000, with the Title IV-D Master presiding. Sharp, the child's mother, appeared in person pro se, while Geer did not appear. The petitioner, Attorney General of Texas, was represented, and a record of the proceedings was made by audiotape. At the beginning of the hearing, the court denied Geer's application for writ of habeas corpus ad testificandum, and overruled his objections to the pretrial order and his request for an interlocutory appeal. The court found that Geer was the child's father, appointed Sharp and Geer as joint managing conservators, and ordered visitation as agreed by the parties. The court further ordered Geer to pay child support of $124 per month, 50 percent of unreimbursed medical expenses, and $6,000 retroactive child support at $100 per month.
Geer filed his notice of appeal to this Court, accompanied by his affidavit of indigency as well as his in forma pauperis data from the Texas Department of Criminal Justice. As set forth in this Court's opinion on the order abating the appeal, Geer's indigency status was conclusively established for purposes of proceeding on appeal exempt from costs.
Upon Geer's written motion, the master entered findings of fact and conclusions of law. The master found that Geer was the father of the child, that Geer was incarcerated, and that no child support had previously been paid for the support of the child. Among his conclusions, the master stated that Geer was voluntarily underemployed by means of his criminal conduct which resulted in his incarceration, and therefore did not rebut the presumption that guideline child support be set on a calculation based upon minimum wage or that such support be made retroactive to the date of birth of the child. The master also concluded that Geer was not entitled to a bench warrant or writ of habeas corpus for purposes of appearing to testify in the suit affecting the parent-child relationship.

Abatement for Record
We abated this appeal and directed the trial court to conduct a hearing and determine why no record had been filed in compliance with Tex.R.App. P. 13.2 and 34.6(a)(2). The trial court found that: (1) the tape recording filed with this Court was an attempt by the Title IV-D Master to comply with a request for a reporter's record from the appellant; (2) it is not possible to obtain a certified recording of the hearing on the merits of this case, but that a fully audible and intelligible recording is available; (3) since the Title IV-D *816 Master does not utilize the services of a court reporter or a court recorder, it is not possible to obtain a certified log of the proceeding in this case as none was made; and (4) exhibits were designated to be included with the record.
Admitted into evidence at the hearing upon remand was an affidavit from the Title IV-D Master stating: he presided over the January 12, 2000 and February 16, 2000 hearings in this case; he operated the tape recorder at the final hearing on the merits on February 16, 2000; and he was tendering a true and correct copy, prepared at his direction on standard cassette, of that portion of the original tape pertaining to the February 16 proceedings. The master's affidavit explains that the only record made of the proceeding that is in addition to the documentation in the court's file is the tape recording. Because there is no certified reporter, however, there is no one to certify the recording. He states that for each recording he makes, he operates the tape recorder, identifies the date and county at the beginning of the tape, and identifies the case by number and party name at the time of the particular hearing. Multiple hearings are generally recorded on one tape, are conducted quickly and generally to the bench. The recording equipment consists of a portable micro-cassette recorder, provided by the Office of the Attorney General. Finally, he stated that there are no resources to provide a certified transcription of the tape. The cassette copy, clearly labeled to reflect the contents of the tape, was also admitted into evidence at the hearing. Thus, we are presented with the issue of whether the cassette recording is in sufficient compliance to be included in the appellate record, when the recording is not certified and there is no certified log of the proceedings.
This Court was presented with a similar issue in In re L.B., where the juvenile court judge recorded a disposition hearing by means of an audiotape recording, and hired a private court reporter to transcribe the audiotapes.[1] Because no court reporter had attended the proceedings, however, the transcribing court reporter could not personally certify the transcription.[2] In that case, we concluded that the statement of facts would consist of a cassette copy of the original tape recording, and that the cassette copy would be prepared and certified in the following manner:
1. The juvenile court or a person with personal knowledge shall certify in writing that the original audiotapes have not been altered or modified in any way since the conclusion of the disposition proceeding.
2. The juvenile court shall make or cause to be made a clear and accurate copy of the original audiotapes to serve as the statement of facts in this appeal. The copy shall be prepared in the form of a standard cassette recording. The cassette shall be labeled to reflect clearly the contents of the cassette and numbered if more than one cassette is required. The juvenile court shall certify in writing that the cassette copies submitted to this Court are true and correct copies of the original audiotapes and that they accurately reflect the disposition.[3]
A master must take evidence and make a record in all Title IV-D cases.[4] Under *817 Tex. Fam.Code Ann. § 201.009, however, a court reporter is only required to be provided when the associate judge presides over a jury trial or a final termination hearing.[5] In the absence of a court reporter, the record may be preserved by any other means approved by the associate judge.[6]
We conclude that the master was authorized to make an audiotape recording of the proceedings, and that the cassette copy of the original taped proceedings will comprise the reporter's record in the present case. The master's affidavit verifies that the cassette copy has been prepared and certified in accordance with the guidelines previously set forth by this Court.[7] The cassette copy has been forwarded to this Court in response to our opinion abating the appeal. We now proceed to address the merits of the case.

Child Support
In his first issue for review, Geer challenges the trial court's award of current and retroactive child support. In particular, he contends that the trial court abused its discretion in finding that he was voluntarily unemployed by means of his criminal conduct and that he failed to rebut the presumption of minimum wage income.
At the February 16 hearing, the court ordered that Geer pay child support of $124 per month, to begin March 1, 2000. The amount of support, which was lowered from the original amount of $155, was based on a presumption of monthly net resources at minimum wage, and calculated at 20 percent of net resources.[8] The court also ordered retroactive child support in the amount of $6,000, with interest of 12 percent per annum, with monthly payments of $100, to begin March 1, 2000.[9] Further, the court ordered Geer to pay 50 percent of the unreimbursed health care expenses of the child.[10] Lastly, the court ordered income withholding from Geer's earnings.[11]
Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions.[12] The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question.[13] We review the trial court's conclusions of law de novo as legal questions.[14] We will follow the trial court's conclusion of law unless it is erroneous as a matter of law.[15]
*818 In determining questions of child support, the trial court's primary consideration must always be the best interest of the child.[16] A trial court has discretion to set child support within the guidelines of the Family Code.[17] A determination of child support will not be reversed unless there is a clear abuse of discretion.[18] In determining whether the trial court abused its discretion in setting a child support order, we will affirm so long as there is some evidence of a substantive and probative character to support the trial court's decision.[19]
Geer contends that he presented evidence to the court of his incarceration and indigency through his filing of an "Applicant's Notice to the Court/Petition to Establish the Parent Child Relationship." There, Geer asserted that he was incarcerated in the Institutional Division of the Texas Department of Criminal Justice. He further asserted that he was indigent and without the right or ability to earn monies in order to contribute to the needs of his child. Geer attached a statement to his pleadings stating that he had absolutely no net monthly income or net resources, and had no legal means by which to generate any income.
Following the trial court's pretrial order on child support, Geer filed a "Father's Objections to Pretrial Order/Notice of Interlocutory Appeal." Therein, Geer objected to the trial court's order of child support based on a presumption of minimum wage income. Geer also argues that his Inmate Trust Fund Balance constitutes evidence of his lack of resources. He filed "in-forma-pauperis data" from the Texas Department of Criminal Justice on March 17, 2000, along with his notice of appeal and affidavit of indigency. The data reflects that as of March 14, 2000, his current balance was $11.11, and for the six months prior to that date, his deposits totaled $125.
Geer asserts that these pleadings and documents rebut the presumption of minimum wage income. Pleadings, however, are generally not competent evidence, even if sworn or verified.[20] Moreover, the documents were not entered into evidence at the trial, and thus may not be considered by this Court in determining whether the trial court abused its discretion.[21] Our duty, as an appellate court, is to consider only the testimony adduced and the evidence tendered and/or admitted at the time of trial.[22] Geer failed to present any other evidence of his net income or resources to the trial court.
In assessing child support, the trial court must first determine the net resources of the parties.[23] The court then determines the percentage of net resources, based on the number of children before the court that the non-custodial parent would pay under the guidelines, *819 and then considers whether any additional factors would justify varying from the guidelines.[24] In the absence of evidence regarding the obligor's resources, the trial court will presume that the party earns the minimum wage for a 40-hour work week.[25] Moreover, absent evidence that the obligor is unemployable, it is appropriate for the court to apply the presumption.[26] Incarceration alone will not rebut the minimum wage presumption.[27] Nor will we presume that an incarcerated person has no assets on which to base a child support award.[28]
In the absence of proof to the contrary, the trial court was authorized to presume that Geer earned the minimum wage from the time of the birth of his child. Thus, because Geer presented no evidence at trial on the value of his net resources and his alleged inability to earn an income while incarcerated, or that he is generally unemployable, we conclude that the trial court did not clearly abuse its discretion in assessing current and retroactive child support.
We overrule Geer's first issue for review.

Bench Warrant
In his second issue for review, Geer contends that the trial court erred in denying his applications for writ of habeas corpus ad testificandum, thereby denying him his due process rights under the federal and state constitutions. He challenges the trial court's finding that he was not entitled to a bench warrant or writ of habeas corpus ad testificandum.
Although a prisoner has a constitutional right of access to the courts, he has only a qualified right to appear personally in a civil proceeding.[29] In determining whether an inmate should attend court proceedings, the trial court must balance the interest of the State in preserving the integrity of the correctional systems with the inmate's right of access, with a goal of achieving a balance that is fundamentally fair.[30]
Factors which may be considered in deciding whether an inmate should be permitted to personally appear at a civil proceeding are:
(1) the cost and inconvenience of transporting the inmate to court;
(2) the security risk and danger to the court and the public by allowing the inmate to attend court;
(3) whether the inmate's claims are substantial;
(4) whether a determination of the matter can reasonably be delayed until the inmate is released;

*820 (5) whether the inmate can and will offer admissible, noncumulative testimony that cannot be offered effectively by deposition, telephone, or otherwise;
(6) whether the inmate's presence is important in judging his demeanor and credibility compared with that of other witnesses;
(7) whether the trial is to the court or to a jury; and
(8) the inmate's probability of success on the merits.[31]
If, after considering these factors, the trial court determines that the prisoner is not entitled to appear personally, then the trial court should permit him to proceed by affidavit, deposition, telephone, or other effective means.[32] We review the trial court's determination by an abuse of discretion standard.[33] A trial court's refusal to consider and rule upon a prisoner's request to appear in a civil proceeding personally or by other means, such that the inmate has been effectively barred from presenting his case, constitutes an abuse of discretion.[34]
At the final hearing held February 16, 2000, the trial court stated that it had reviewed Geer's writ application and that such application was denied. Although the trial court denied the writ applications, it did not bar Geer from proceeding by affidavit, deposition, telephone, or other effective means. Geer has not demonstrated why those other means would not have been effective, or how he has been prevented from presenting his case to the trial court. We decline to find that the trial court abused its discretion in denying the applications for writ of habeas corpus ad testificandum.[35]
We overrule Geer's second issue for review.

CONCLUSION
We find that the trial court did not abuse its discretion in ordering Geer to pay child support, or in denying Geer's application for writ of habeas corpus ad testificandum. Accordingly, we affirm the trial court judgment.
NOTES
[1] See In re L.B., 936 S.W.2d 335, 336 (Tex. App.-El Paso 1996, no writ).
[2] Id. at 337.
[3] Id.
[4] Tex. Fam.Code Ann. § 201.104(b) (Vernon Supp.2001).
[5] Id. at § 201.009(a).
[6] Id. at § 201.009(c).
[7] See In re L.B., 936 S.W.2d at 337.
[8] See Tex. Fam.Code Ann. §§ 154.125, 154.130 (Vernon 1996).
[9] See Tex. Fam.Code Ann. § 154.131 (Vernon 1996).
[10] See Tex. Fam.Code Ann. § 154.183(c) (Vernon 1996).
[11] See Tex. Fam.Code Ann. § 158.001 (Vernon 1996 & Supp.2001).
[12] Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.1991); In re Davis, 30 S.W.3d 609, 613 (Tex.App.-Texarkana 2000, no pet.).
[13] Davis, 30 S.W.3d at 613.
[14] Smith v. Smith, 22 S.W.3d 140, 143-44 (Tex.App.-Houston [14th Dist.] 2000, no pet.); Bright & Co. v. Holbein Family Mineral Trust, 995 S.W.2d 742, 745 (Tex.App.-San Antonio 1999, pet. denied).
[15] See Smith, 22 S.W.3d at 144.
[16] Sanchez v. Sanchez, 915 S.W.2d 99, 102 (Tex.App.-San Antonio 1996, no writ).
[17] See Tex. Fam.Code Ann. § 154.121 (Vernon 1996); Reyes v. Reyes, 946 S.W.2d 627, 629 (Tex.App.-Waco 1997, no writ).
[18] See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); In re M.M., 980 S.W.2d 699, 700 (Tex.App.-San Antonio 1998, no pet.).
[19] Reyes, 946 S.W.2d at 629.
[20] Laidlaw Waste Systems (Dallas) v. City of Wilmer, 904 S.W.2d 656, 660 (Tex.1995).
[21] Reyes, 946 S.W.2d at 630; Vanscot Concrete Co. v. Bailey, 862 S.W.2d 781, 783 (Tex. App.-Fort Worth 1993), aff'd, 894 S.W.2d 757 (Tex.1995).
[22] Gulf Oil Corp. v. Southland Royalty Co., 478 S.W.2d 583, 591 (Tex.Civ.App.-El Paso 1972), aff'd, 496 S.W.2d 547 (Tex.1973).
[23] In re M.M., 980 S.W.2d at 700.
[24] Id.
[25] See Tex. Fam.Code Ann. § 154.068 (Vernon 1996); In re M.M., 980 S.W.2d at 701.
[26] See Tex. Fam.Code Ann. § 154.068 (Vernon 1996); In re Hidalgo, 938 S.W.2d 492, 498 (Tex.App.-Texarkana 1996, no writ); In re Martin, 881 S.W.2d 531, 536 (Tex.App.-Texarkana 1994, writ denied).
[27] In re M.M., 980 S.W.2d at 701.
[28] See id. at 700.
[29] In re Taylor, 39 S.W.3d 406, 412 (Tex. App.-Waco 2001, no pet.); Dodd v. Dodd, 17 S.W.3d 714, 717 (Tex.App.-Houston [1st Dist.] 2000, no pet.); accord Pedraza v. Crossroads Sec. Sys., 960 S.W.2d 339, 342 (Tex. App.-Corpus Christi 1997, no pet.); Armstrong v. Randle, 881 S.W.2d 53, 56 (Tex. App.-Texarkana 1994, writ denied); Byrd v. Attorney General, 877 S.W.2d 566, 569 (Tex. App.-Beaumont 1994, no writ) (per curiam).
[30] Aguilar v. Alvarado, 39 S.W.3d 244, 248 (Tex.App.-Waco 1999, pet. denied); Pedraza, 960 S.W.2d at 342; Armstrong, 881 S.W.2d at 57.
[31] Taylor, 39 S.W.3d at 412; Pedraza, 960 S.W.2d at 342; Armstrong, 881 S.W.2d at 57.
[32] Taylor, 39 S.W.3d at 412; Aguilar, 39 S.W.3d at 248.
[33] Aguilar, 39 S.W.3d at 248.
[34] Id.; Armstrong, 881 S.W.2d at 57.
[35] See Aguilar, 39 S.W.3d at 248-49.