COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
  
  
  
  
  
 IN
 THE MATTER OF J.K.R.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-03-00406-CV
  
 Appeal from the
  
 65th District Court
  
 of El Paso County, Texas
  
 (TC#0201044)
 
 




 

MEMORANDUM
OPINION

J.K.R. appeals an order committing
him to the Texas Youth Commission (TYC). 
In two issues, he argues that the evidence is legally and factually
insufficient to support the order.  We
affirm.

Factual and
Procedural Background








In October 2002, when he was
fifteen-years-old, J.K.R. was adjudicated delinquent for cutting his sister on
the shoulder with a clothes hanger.  He
was placed on supervised probation until his eighteenth birthday.  In November 2002, the trial court sustained
the State=s motion to modify disposition,
finding that J.K.R. had violated probation by being truant, being suspended
from school, and failing to submit to urinalysis.  The court placed J.K.R. in the Challenge Boot
Camp Program.  In April 2003, he
successfully completed that program, and the trial court allowed him to return
home on supervised probation.

In July 2003, the State filed a
second motion to modify disposition.  The
trial court sustained this motion, finding that J.K.R. had violated probation
by using marijuana and running away from home. 
After a disposition hearing, the court signed an order committing J.K.R.
to TYC.  It is from this order that
J.K.R. appeals.

At the time of the disposition
hearing, J.K.R was sixteen-years-old. 
His probation officer, Sonia Solis, recommended that he be committed to
TYC.  She testified that J.K.R. did well
in the behavioral aspect of the Challenge Boot Camp Program; he followed the
rules and became more respectful of Solis and his parents.  But he never really focused in the counseling
aspect of the program.  His attitude was,
A>I=ll change when I=m ready to change.=@

J.K.R. initially did well after he
was released from the program.  Then, on
May 29th, slightly more than a month after his release, he left home and
returned the next day.  His mother
reported his absence to the probation department.  On June 2nd, Solis and her supervisor
admonished him.  That day, he tested
positive for marijuana use.  He was
referred to Aliviane for intensive out-patient drug treatment, but on June 6th
he ran away again before starting that program. 
He was detained on June 25th and again tested positive for marijuana
use.  He told Solis that one of the
reasons he ran away was because he could not stay away from drugs.








Solis testified that she did not
believe J.K.R.=s parents have contributed to his
delinquency.  She believed that they
tried to control and supervise him but they have been unable to because J.K.R.
runs away, continues to use drugs, and Ais not lending himself to any type of
control in the home.@  Solis stated, AThe need to remove him from the home
is based on the fact that the juvenile does not remain in the home.  He . . . runs away to use drugs.@ 
According to Solis, J.K.R. uses inhalants, cocaine, marijuana, and
alcohol.   J.K.R. has expressed Aa conscious need to use@ drugs.








Solis stated that electronic
monitoring was never considered for J.K.R. because his parents always report
when he leaves.  Regarding the services
that J.K.R. has received, Solis stated that when he was initially placed on
supervised probation, he was referred to El Paso Community MHMR for individual
and family counseling and to Texas Serenity for drug counseling, but he
violated his probation and was removed from his home so quickly that he never
received those services.  While he was in
the Challenge Boot Camp Program, he participated in four months of individual,
group, and family counseling to address his behavior, drug use, and discord in
the home.  Solis admitted on
cross-examination that he would not have been released from that program unless
they believed that he had addressed his drug problem.  Providence worked with J.K.R. for about a
month after he was released from the Challenge Boot Camp Program and before he
ran away.  According to Solis, a month
was not enough time for the counseling to be successful.  She testified that several other drug abuse
programs were available--Texas Serenity, Aliviane, New Beginnings, and Project
Libertad.

Solis testified that J.K.R.=s parents told her that he previously
was very active in sports and they do not Aunderstand why all the sudden he
stopped wanting to do all of that stuff that he loved.@ 
She also mentioned that one of J.K.R.=s friends had committed suicide, but
J.K.R. did not talk about that with anyone. 
Solis said that she told J.K.R. that she was recommending that he be
committed to TYC.  According to her,
J.K.R. Aat this point doesn=t care.@

A psychological assessment by Dr.
Basurto and a psychiatric assessment by Dr. Rodriguez-Chevres were admitted
into evidence without objection.  Dr.
Basurto=s report states that J.K.R. told him
that he uses cocaine, as well as marijuana. 
Dr. Basurto found that J.K.R. had a Asignificant rating of anxiety,@ suggesting substance-abuse
withdrawal.   Dr. Basurto recommended
that J.K.R. be placed in a long-term, structured substance-abuse treatment
facility.  Dr. Rodriguez-Chevres found
that J.K.R. has abused cocaine, marijuana, and alcohol.  He had previously prescribed an antidepressant
for J.K.R. to help him with impulse control and drug cravings, but J.K.R. would
not take the medicine.  Dr.
Rodriguez-Chevres continued to believe that J.K.R. would benefit from the
medicine.   He determined that J.K.R. was
Agreatly in need of drug
rehabilitation treatment even if it means sending him out of town.@ 
In reference to the doctors= reports, Solis testified that TYC
can address J.K.R.=s depression and drug problems.








J.K.R.=s mother testified that he is a Agood kid,@ but he gets into trouble with his
friends.  When J.K.R. leaves, she and her
husband do not physically try to stop him, but they tell him that they will
report him to the probation department. 
She believed that he ran away from home the first time because it was
the last day of school Aand he wanted to go out and party.@ 
She testified that J.K.R. has had a drug problem since he was thirteen
and that getting him into a secure facility might help, but she did not want
him to go to TYC.  As an alternative to
TYC, someone had recommended a six-month drug-treatment program called
Everchange and she thought her insurance would cover that program.

In her closing argument, J.K.R.=s counsel asked the court not to Agive up@ on him by sending him to TYC.  The prosecutor pointed out that being
sixteen, J.K.R. only had a year left before his drug offenses would land him in
the adult criminal justice system.  He
argued that TYC was J.K.R.=s last chance to avoid ending up in that system.

Standard of
Review








The trial court is vested with broad
discretion to determine a suitable disposition for a juvenile who has been
adjudicated delinquent, and this is especially true of a decision to modify a
disposition.  In re L.R., 67
S.W.3d 332, 338 (Tex. App.--El Paso 2001, no pet.).  Unless the trial court abuses this
discretion, we will not disturb the court=s decision.  Id. 
To determine whether the trial court abused its discretion, we engage in
a two-pronged analysis.  First, did the
trial court have sufficient information upon which to exercise its
discretion?  To answer this question, we
apply the traditional sufficiency review standards.  Second, did the trial court err in its
application of discretion?  To answer
this question, we consider whether, based on the record evidence, the trial
court made an arbitrary or unreasonable decision.  Id. 
The mere fact that the trial court may have reached a different decision
than the one this Court would have reached does not demonstrate an abuse of
discretion.  Id. at 339.

A trial court=s findings are reviewable for legal
and factual sufficiency in the same way as a jury=s answers to questions in a
charge.  In the Interest of B.R.G.,
48 S.W.3d 812, 817 (Tex. App.--El Paso 2001, no pet.).  To determine whether the evidence was legally
sufficient, we consider only the evidence and inferences that support the trial
court=s findings and disregard all evidence
and inferences to the contrary.  The
evidence is legally sufficient if more than a scintilla of evidence supports
the challenged finding.  L.R., 67
S.W.3d at 339.  To determine whether the
evidence was factually sufficient, we consider all of the evidence to determine
whether the challenged finding is so against the great weight and preponderance
of the evidence as to be manifestly unjust. 
Id.

Discussion








The Juvenile Justice Code provides
that if a court commits a juvenile to TYC, the court must state in its order
that:  (1) it is in the juvenile=s best interests to be placed outside
his home; (2) reasonable efforts were made to prevent or eliminate the need for
the juvenile=s removal from the home and to make
it possible for him to return home; and (3) the juvenile, in his home, cannot
be provided the quality of care and level of support and supervision that he
needs to meet the conditions of probation. 
Tex. Fam. Code Ann. ' 54.04(i)(1) (Vernon Supp.
2004).  The Code also provides that when
a court modifies a previous disposition, it must specifically state in the
order its reasons for doing so.  Id.
' 54.05(i).  This Court has held that when a court
modifies a disposition by committing a juvenile to TYC, it must make the
findings required by section 54.04(i)(1). 
L.R., 67 S.W.3d at 337.

In this case, the court included the
required section 54.04(i)(1) findings in its order.  The court stated that it was in J.K.R.=s best interest to be placed outside
his home because he does not lend himself to suitable supervision, control, or
discipline.  The court additionally cited
the following reasons for committing J.K.R. to TYC:  (1) the juvenile needs to be held accountable
and responsible for his delinquent behavior; (2) the juvenile poses a risk to
the safety and protection of the community if no disposition is made; (3) no
community-based intermediate sanction is available to adequately address the
needs of the juvenile or to adequately protect the needs of the community; (4)
the gravity of the offense requires that the juvenile be confined to a secure
facility; and (5) the prior juvenile record of the juvenile requires that he be
confined in a secure facility.








On appeal, J.K.R. challenges the
sufficiency of the evidence to support most of the trial court=s findings, but he does not challenge
the sufficiency of the evidence to support the court=s findings that he needs to be held
accountable and responsible for his delinquent behavior and that he poses a
risk to the safety and protection of the community if no disposition is
made.  These unchallenged findings are
binding on this Court.  Id. at
339.

J.K.R. argues that the evidence is
legally and factually insufficient to support the trial court=s finding that in his home he could
not be provided the quality of care and level of support and supervision he
needed to meet the conditions of probation. 
He points out that Solis testified that his parents had not contributed
to his delinquency and that they had been active in his rehabilitation.  Additionally, on cross-examination, J.K.R.=s counsel asked Solis, AAnd you indicated the parents can
control him when he is at home.  He
behaves when he is at home.  At home when
he is at home with his parents, that is not a problem?@ 
Solis answered, AThe problem is not that the juvenile=s parents can=t control him.@








Despite this testimony, we conclude
that the evidence is legally and factually sufficient to support the court=s finding that in his home J.K.R.
could not be provided the quality of care and level of support and supervision
he needed to meet the conditions of probation. 
J.K.R. was at home on probation before and after he was in the Challenge
Boot Camp Program.  During both periods,
he violated his probation.  And although
Solis=s testimony indicated that J.K.R.=s parents had not contributed to his
delinquency and had attempted to participate in his rehabilitation, she also
testified that J.K.R. does not lend himself to their efforts.  Instead, he runs away and continues to use
drugs.  Dr. Basurto recommended a
long-term, structured substance-abuse facility. 
From all this evidence, the trial court could have found that J.K.R.
needs to be in a secure facility such as TYC.

J.K.R. also argues that the evidence
is legally and factually insufficient to support the trial court=s findings that no community-based
intermediate sanction is available to adequately address his needs and that
reasonable efforts were made to prevent or eliminate the need to remove him
from his home.  He relies in part on
Solis=s testimony that several
community-based programs were available. 
But Solis also testified that the probation department had referred him
to some of these programs, such as Providence and Aliviane, but he either
failed to complete the program or ran away before he could even start.

J.K.R. also relies on his mother=s testimony to argue that the
Everchange Program would have been a viable alternative to TYC.  However, his mother=s testimony about that program was
vague.  She did not indicate that she had
taken any steps to get J.K.R. into Everchange, which is apparently not publicly
funded.  At first, she testified that she
did not know what her insurance would cover, but later testified that she
thought her insurance would cover the program.








J.K.R. argues that the system has
failed him.  Solis testified that his
basic problem is drug abuse.  She also
stated that it was a surprise to everyone when he ran away because he seemed to
be progressing in his treatment and that it is a mystery to everyone why he
uses drugs.  One of J.K.R.=s friends had committed suicide and
he seemed to be depressed, but he was not counseled about the suicide or, his
counsel asserts, treated for depression. 
This evidence does not indicate that the system has failed J.K.R.  Solis detailed the efforts that were made to
treat J.K.R.=s drug problems without sending him
to TYC.  Furthermore, Dr.
Rodriguez-Chevres prescribed an antidepressant, but J.K.R. refused to take it.

We conclude that the evidence is
legally and factually sufficient to support the trial court=s findings that no community-based
intermediate sanction is available to adequately address J.K.R.=s needs and that reasonable efforts
were made to prevent or eliminate the need to remove J.K.R. from his home, as
well as the court=s finding that in his home J.K.R. could not be provided the
quality of care and level of support and supervision he needed to meet the
conditions of probation.  Based on these
findings, along with the unchallenged findings that J.K.R. needs to be held
accountable and responsible for his delinquent behavior and that he poses a
risk to the safety and protection of the community, the trial court did not
abuse its discretion in committing J.K.R. to TYC.[1]  








Conclusion

For the reasons stated herein, J.K.R.=s two issues on appeal are overruled,
and the judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

April 15, 2004

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 











[1]J.K.R.
argues that the evidence is legally and factually insufficient to support the
trial court=s
findings that the gravity of the offense and his prior juvenile record require
that he be confined to a secure facility. 
Because the findings discussed above are sufficient to support the trial
court=s
decision to commit J.K.R. to TYC, we need not address the sufficiency of the
evidence to support these two findings.  See
L.R., 67 S.W.3d at 339 & n.4.