

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-14-00037-CV

_____

IN THE INTEREST OF B.P., A CHILD

On Appeal from County Court at Law No. 2
Potter County, Texas
Trial Court No. 82,525-2; Honorable Pamela Sirmon, Presiding

July 25, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

By separate briefs, Appellants, D.T. and A.P., appeal the trial court's *Nunc Pro Tunc Order of Termination* which terminated their parental rights to B.P., their son.[1] D.T. presents a sole issue challenging whether the legal and factual sufficiency of the evidence to support termination of her parental rights satisfies the clear and convincing standard of review. By four issues, A.P. contends the evidence is legally and factually insufficient to support each ground for termination under section 161.001(1)(E), (N), (O) and (P) of the Texas Family Code.[2] Neither parent challenges the trial court's finding that termination of their parental rights was in B.P.'s best interest. As to D.T., we reverse the trial court's termination order and remand the cause for a new trial. As to A.P., we affirm the trial court's order of termination.

## BACKGROUND

D.T. and A.P., both in their twenties at the time of the underlying proceedings, are the parents of B.P., a young male born in June 2012.[3] Within days of B.P.'s birth, D.T. was admitted into a facility for evaluation for depression and suicidal ideations. She was treated and released quickly. The Department of Family and Protective Services filed a petition seeking conservatorship of B.P. and alternatively, termination of

---

[1] D.T. is the child's mother and A.P. is the child's father. To protect the parents' and the child's privacy, we refer to Appellants and other parties by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014). *See also* TEX. R. APP. P. 9.8(b).

[2] TEX. FAM. CODE ANN. § 161.001(1) (E), (N), (O) and (P) (West 2014). Unless otherwise designated all references to section or § are to the Family Code.

[3] At the time of the final hearing, D.T. had four children and was pregnant with her fifth. A.P. is the father of the two youngest and of the unborn child, who was due to be born in April 2014. In two earlier cases involving the Department, D.T. relinquished her parental rights to a daughter and gave permanent managing conservatorship of her oldest son to his father. The fourth child, a son born in 2013 who is in the Department's custody in Gainesville, is in foster care. A.P. has two older children who live with his ex-wife in California.

2

parental rights. D.T. has a history with the Department involving her two older children but the admissible evidence in the record is silent on the specifics for removal of those children. The Department deemed A.P. unsuitable as a caregiver due to domestic violence issues and drug and alcohol abuse issues and took custody of B.P. upon his release from the hospital.

The Department developed service plans for both parents in August 2012, and although the plans are unsigned, the record establishes the plans were thoroughly discussed with each parent. By order dated December 17, 2012, the trial court approved and adopted the plans. However, the record does not contain a separate written order for actions necessary for the parents to obtain B.P.'s return.[4]

D.T. and A.P. did not have family or a support group in Amarillo. In May 2013, D.T. moved to Gainesville, Texas, to live with her aunt. A.P. later followed her to Gainesville and moved in with her. Eventually, they moved out of D.T.'s aunt's house but did not provide the Department with proof of housing or employment. Although D.T. kept in contact with her caseworker in Amarillo, she always called from a different phone number so the Department had no permanent contact number for her. Both parents visited B.P., but after they moved to Gainesville, circumstances made regular visits difficult.

Both D.T. and A.P. substantially complied with the requirements of their respective service plans. However, the Department expressed concern with their failure

---

[4] *See In re B.L.R.P.*, 269 S.W.3d 707, 711 (Tex. App.—Amarillo 2008, no pet.). The trial court took judicial notice of the service plans and a status hearing order approved and adopted them as if set out verbatim. The better practice when relying on paragraph (O) for termination of parental rights is to include an actual order for actions necessary for the parent to obtain the return of the child in the record. *Id.* at 711.

to complete domestic violence programs and regarding A.P., a substance abuse program.

After the final hearing, the trial court found that termination of both parents' rights was in B.P.'s best interest. The trial court further found D.T. had:

> engaged in conduct or knowingly placed B.P. with persons who engaged in conduct which endangered the physical or emotional well-being of B.P.;
>
> constructively abandoned B.P. who had been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (1) the Department or authorized agency had made reasonable efforts to return B.P. to his mother; (2) the mother had not regularly visited or maintained significant contact with B.P.; and (3) the mother had demonstrated an inability to provide B.P. with a safe environment; and
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of B.P. who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse and neglect of B.P.

*See* § 161.001(1)(E), (N), (O).

Regarding A.P., in addition to the best interest finding, the trial court also found he had:

> engaged in conduct or knowingly placed B.P. with persons who engaged in conduct which endangered the physical or emotional well-being of B.P.;
>
> constructively abandoned B.P. who had been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (1) the Department or authorized agency had made reasonable efforts to return B.P. to his father; (2) the father had not regularly visited or maintained significant contact with B.P.; and (3) the father had demonstrated an inability to provide B.P. with a safe environment;
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of B.P. who

4

had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse and neglect of B.P.; and

used a controlled substance, as defined by chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of B.P., and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance.

*See* § 161.001(1)(E), (N), (O), (P).

## STANDARD OF REVIEW IN TERMINATION CASES

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination statutes are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* § 101.007 (West 2014factfinder). *See also In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard onto our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d at 266). To give appropriate deference to the factfinder's conclusions, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* As a corollary to this requirement, an appellate court should also disregard all evidence that a reasonable factfinder could have disbelieved or found to been incredible.[5] *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 98 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

---

[5] This does not mean that a court must disregard *all* evidence that does not support the finding. To do so could skew the analysis of whether there is clear and convincing evidence. *See In re E.N.C.*, 384 S.W.3d at 802.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interest. *See* § 161.001(1), (2) (West 2014); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding. *In re E.A.G.*, 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

### GROUNDS FOR TERMINATION

#### § 161.001(1)(E)

Parental rights may be terminated under paragraph (E) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E) requires more than a single act or omission; a voluntary, deliberate and conscious "course of conduct" by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort

7

Worth 2000, pet. denied). "Endanger" means to expose to loss or injury; to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996), (citing *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, and it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *See id. See also In re T.N.*, 180 S.W.3d at 383. Endangering conduct may include a parent's actions before the child's birth, while the parent had custody of older children. *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

### § 161.001(1)(N)

Under paragraph (N), parental rights may be terminated if the trial court finds that a parent has constructively abandoned a child who has been in the permanent or temporary conservatorship of the Department for not less than six months and reasonable efforts have been made to return the child; the parent has not regularly visited or maintained significant contact with the child; and the parent has demonstrated an inability to provide the child with a safe environment. *See In re D.T.*, 34 S.W.3d at 633.

### § 161.001(1)(O)

Parental rights may be terminated under paragraph (O) if the Department establishes the child was removed under chapter 262 because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the child; and the parent failed to comply with that order. *See In*

*re J.F.C.*, 96 S.W.3d at 278-79. The Supreme Court has broadened the "abuse or neglect" elements to include risks or threats of the environment in which the child is placed. *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) (broadly interpreting the "abuse or neglect" removal standards of chapter 262 of the Family Code to encompass the risks or threats of the environment in which the child is placed including harm suffered or the danger faced by other children under the parent's care). *See also In re S.M.R.*, No. 12-0968, 2014 Tex. LEXIS 454, at *15-16 (Tex. June 6, 2014); *In re K.N.D.*, 424 S.W.3d 8, 10 (Tex. 2014). Termination under paragraph (O) does not allow for consideration of excuses for noncompliance nor does it consider "substantial compliance" to be the same as completion. *See In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.); *In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).[6]

### § 161.001(1)(P)

Under paragraph (P), a parent's rights may be terminated if the Department proves, and the trial court finds, by clear and convincing evidence that the parent has used a controlled substance, as defined by chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the child and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance. *See In re Estate A.Q.W.*, 395 S.W.3d 285, 290 (Tex. App.—San Antonio 2013, no pet.).

---

[6] Excuses for noncompliance and "substantial compliance" may, however, be factors in determining whether termination is in the best interest of the child, a matter not at issue in this proceeding.

ANALYSIS

A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is a commanding one. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Courts require the State to overcome significant burdens before removing children from their parents. *In re E.C.R.*, 402 S.W.3d at 240. "These impediments are essential to protect the parent's fundamental liberty interest in the companionship, care, custody, and management of [his or] her children." *Id.* (citing *Lassiter*, 452 U.S. at 27). We reiterate that termination statutes are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d at 563.

## TERMINATION OF D.T.'S PARENTAL RIGHTS

Paragraph (E)

Under paragraph (E), the Department was required to show by clear and convincing evidence that D.T. engaged in conduct that endangered B.P.'s physical and emotional well-being. There is a well settled body of law dedicated to defining "endangerment." *See In re M.C.,* 917 S.W.2d at 269 (defining endangerment as exposing a child to loss or injury or to jeopardize a child's emotional or physical health). *See also Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The endangering conduct does not have to occur in the presence of the child and may occur before or after the child's birth. *See In re S.M.L.D.*, 150 S.W.3d 754, 757-58 (Tex. App.—Amarillo 2004, no pet.).

Domestic violence issues may be considered evidence of endangerment. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). However, termination under paragraph (E) must be supported by more than a single act—there must be clear and convincing evidence of a voluntary, deliberate and conscious course of conduct. *In re D.T.,* 34 S.W.3d at 634. Evidence in support of endangerment must be offered and admitted. *See generally In re Allen*, 359 S.W.3d 284, 289 (Tex. App.—Texarkana 2012, orig. proceeding). *See also In re B.R.G.*, 48 S.W.3d 812, 818 (Tex. App.—El Paso 2001, no pet.) (noting that pleadings are generally not competent evidence, even if sworn or verified). Generally, facts recited in documents in support of removal of children are subject to reasonable dispute and therefore, not appropriate for judicial notice. *See generally In re* Allen, 359 S.W.3d at 289 (citing Tex. R. Evid. 201(b)).

The manner in which a parent treats other children or family members may also be considered in deciding whether that parent engaged in a course of conduct that endangered the physical or emotional well-being of a child. *Cervantes-Peterson v. Tex. Dep't of Family and Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist. 2006, no pet.). In this case, the trial court, in issuing its ruling, acknowledged that D.T.'s parental rights to an older child had been terminated but declined to make a finding under section 161.001(1)(M)[7] because termination was based on relinquishment

---

[7] Paragraph (M) provides for termination if there is clear and convincing evidence the parent had his or her parent-child relationship terminated with respect to another child on a finding that parent violated paragraph (D) or (E). Paragraph (D) provides for termination of the parent-child relationship if the parent knowingly places or knowingly allows the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and (E) provides for termination if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

without any evidence being presented on whether D.T. had violated paragraph (D) or (E).

A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of a child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Suicidal ideations may also contribute to a finding that a parent engaged in endangering conduct. *Id.*

The Department's evidence at the final hearing consisted of testimony from the caseworker, B.P.'s foster mother and a sole exhibit showing D.T. had been convicted in 2013 of misdemeanor assault against A.P. D.T. has had an on-again, off-again relationship with A.P. since September 2011. The affidavit in support of removal was prepared by another caseworker who did not testify at the final hearing. It contains recitations of domestic violence committed by D.T. with multiple layers of hearsay.[8] The Department did not offer any admissible evidence of other endangering conduct committed by D.T. while she had custody of her older children. Although the caseworker testified that D.T. reported domestic violence by A.P., which led to the removal of her two older children, termination under paragraph (E) must result from the parent's conduct alone.

In addition to D.T.'s history with the Department, D.T.'s brief admittance into a mental health facility for evaluation of suicidal ideations was cited as a reason for B.P.'s

---

[8] We recognize the Supreme Court in *In re E.C.R.*, 402 S.W.3d at 240-41, referenced allegations of physical abuse recited in the affidavit in support of a petition seeking conservatorship of the child and termination of parental rights. This Court is not inclined to disregard the Texas Rules of Evidence in termination cases which are strictly scrutinized and require a heightened standard of review.

removal. However, the Department did not present evidence of the results of D.T.'s evaluation. There was no evidence that D.T.'s mental state following B.P.'s birth would cause her to engage in endangering conduct. The Department did not establish a continuing course of endangering conduct by D.T. against B.P., another child or a family member.

The Department's reliance on paragraph (E) as a predicate ground for termination of D.T.'s parental rights is further diluted by the caseworker's testimony that D.T. made positive changes in working her service plan and appeared to be more responsible. According to the caseworker, before D.T. moved to Gainesville, she visited B.P. regularly and acted appropriately with him during those visits. The caseworker added that D.T. was bonding with B.P. and "you could tell she was trying." In response to questioning on whether D.T. was a good mother, the caseworker testified, "[y]es, she knew what to do with [B.P.]."

The caseworker did, however, express concern over D.T.'s failure to complete the Women Against Violence (WAV) program to address domestic violence issues. She also testified D.T. struggled to maintain employment and housing. However, she did not testify how those shortcomings could endanger B.P.'s physical or emotional well-being.

D.T. attended court-ordered individual and couple's counseling from Fall 2012 through Spring 2013. The counselor's progress reports were introduced into evidence under Rule 803(6) of the Texas Rules of Evidence and showed that D.T. displayed a good attitude and was open to processing issues to obtain the return of her child. The caseworker testified the results of counseling were positive. Over the Department's

hearsay objection, she further testified to receiving an e-mail from D.T.'s counselor in which he expressed that termination of her parental rights would be inappropriate.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support termination under paragraph (E). However, we conclude the Department's evidence was factually insufficient to overcome the fundamental fairness required to dissolve the parent-child relationship between D.T. and her son, B.P.

Paragraph (N)

The Department was required to show by clear and convincing evidence that D.T. constructively abandoned B.P., the Department made reasonable efforts to return B.P.,[9] D.T. did not visit regularly or maintain contact with the child and demonstrated an inability to provide a safe environment. The linchpin of paragraph (N) is constructive abandonment by a parent. "Constructive" is defined as "[l]egally imputed; existing by virtue of legal fiction though not existing in fact." BLACK'S LAW DICTIONARY 356 (9th ed. 2009). Under the term "constructive abandonment" is a reference to: "1. Family Law. See *constructive desertion* under DESERTION." *Id.* Desertion is defined as "the willful and unjustified abandonment of a person's duties or obligations" to family. *Id.* at 511.

The caseworker acknowledged D.T. did not abandon B.P. However, the Department tailored its case to support constructive abandonment because D.T. moved

---

[9] Implementation of a family service plan is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan. *See M.C. v. Tex. Dep't of Family & Protecive Servs.*, 300 S.W.3d 305, 310-11 (Tex. App.—El Paso 2009, pet. denied).

14

to Gainesville in May 2013 to have family support. At that same time, B.P.'s foster parents moved from Amarillo to Lubbock and coordinating visitation became arduous. D.T. had to travel hundreds of miles by bus to visit and arrangements had to be made to bring B.P. from Lubbock to Amarillo for those visits.[10] A scheduled September 2013 visit failed due to miscommunication. According to the caseworker, a visit had been arranged and D.T. was instructed to call if she was *not* going to attend. But the Department canceled the visit because D.T. did not call. In December 2013, D.T. requested visitation which was denied because she requested it for the following morning and the Department required twenty-four hours' notice.

The caseworker testified that before D.T. moved to Gainesville, she visited B.P. regularly and the visits were always appropriate. After D.T. moved, she kept in contact with the Department albeit from different phone numbers. The caseworker also testified D.T. had housing and was employed, but she was not providing proof to the Department. D.T. was unable to visit B.P. after she moved to Gainesville and given B.P.'s age, she could not communicate with him by phone or through correspondence. We conclude the failed visits after D.T. moved to Gainesville were not the result of constructive abandonment,[11] the trigger for terminating parental rights under paragraph (N). Viewing the evidence in the light most favorable to the trial court's finding, we conclude it is legally insufficient to support termination under paragraph (N). Termination of D.T.'s parental rights under paragraph (N) also fails.

---

[10] The caseworker testified the Department was not in a position to supervise visits in Lubbock.

[11] This Court is hard pressed to find that maintaining regular visitation under the circumstances of this case, which required coordination from three cities hundreds of miles apart, constitutes constructive abandonment.

Paragraph (O)

The first step in relying on paragraph (O) to sever the relationship between a parent and child is removal of the child for abuse or neglect or for a risk or threat of abuse or neglect. *See In re E.C.R.*, 402 S.W.3d at 248. It is undisputed that B.P. was not abused. He was taken into custody by the Department after he was released from the hospital following his birth. The Department intervened because D.T. was having emotional and mental health issues and there was a history between D.T. and the Department with her two older children. However, the specifics of that history were not established by admissible, clear and convincing evidence. No admissible evidence of abuse, neglect or other endangering conduct was offered. D.T.'s misdemeanor conviction for assault resulted from an offense committed in December 2012, well after B.P.'s birth and removal. Thus, it could not have contributed as a basis for removal.

The Department's concern over D.T.'s mental health issues should have been alleviated when D.T. was treated and released within days of being evaluated. The caseworker did not testify to any concerns of D.T.'s mental health during the attempt to reunify B.P. with his mother. Viewing the evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support termination under paragraph (O). However, in light of the entire record, we conclude the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction about the truth of the allegations. The evidence in support of termination under paragraph (O) is factually insufficient.

16

The Department must be held to the heightened burden of proof and comply with fundamental fairness and due process requirements when depriving a parent of a right of constitutional dimension. The Department must present sufficient evidence to support at least one of twenty statutory grounds for termination that will withstand review under the heightened standard of clear and convincing evidence. Here, as regards D.T., the Department alleged seventeen predicate grounds for termination, the trial court found three grounds in support of termination and the admissible evidence supports none. D.T.'s issue is sustained.

**Termination of A.P.'s Parental Rights**

Paragraph (E)

By his first of four issues, A.P. maintains the evidence is legally and factually insufficient to support termination of his parental rights under paragraph (E). We disagree. The Department was required to prove by clear and convincing evidence that A.P. engaged in a continuous course of conduct that endangered B.P. The Department emphasized his problems with drug and alcohol abuse and also alleged domestic violence issues.

A.P. was on community supervision for driving while intoxicated in August 2012. A parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). The caseworker testified A.P. admitted to her he had been using "K2."[12]

---

[12] "K2" is a slang term for a synthetic cannabinoid.

The caseworker testified that during one of A.P.'s visits with B.P. she was notified that A.P. "seemed out of sorts."  She and her program director proceeded to check on A.P. and discovered he was going to the restroom to throw up.  The visit with B.P. ended abruptly, and A.P. admitted to the program director he had been drinking before arriving for his visit.  The caseworker also testified that all of A.P.'s referrals and recommendations indicate he is an alcoholic.  A.P. refused to complete his drug and alcohol abuse program and denied to the caseworker that he had a drinking problem.  A parent's struggle with alcohol abuse may result in endangering conduct.  *In re R.W.*, 129 S.W.3d at 739.

According to the caseworker, prior instances of domestic violence by A.P. and reported by D.T. were the reasons for removal of D.T.'s children in prior cases.  Use of K2 and excessive consumption of alcohol by A.P. demonstrates he engaged in more than a single act of conduct which could endanger B.P.'s physical and emotional well-being.  *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (noting that evidence of drug use or alcohol is relevant in determining whether a parent poses a present or future risk of endangerment).  We find the evidence to be clear and convincing to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations the Department sought to establish under paragraph (E).

Only one predicate ground under section 161.001(1) is sufficient to support a termination order.  *In re T.N.*, 180 S.W.3d at 384.  Additionally, A.P. does not challenge the trial court's best interest finding.  *See* § 161.001(2).  Consequently, A.P.'s first issue is overruled and his second, third and fourth issues by which he challenges termination of his parental rights under paragraphs (N), (O) and (P) are pretermitted.

## CONCLUSION

The portion of the trial court's order terminating the parental rights of D.T. to her son, B.P., is reversed and the cause is remanded for a new trial; while the portion of the trial court's order terminating the parental rights of A.P. to his son, B.P., is affirmed.

Patrick A. Pirtle
Justice